## INSURANCE COMPANIES v. BOYKIN.

1. After a loss covered by a policy of insurance, an affidavit by the insured of the time, amount, and circumstances of the loss, accompanying proof that a loss had occurred, was made while he was insane. *Held,*
   (i) That insanity was a sufficient excuse for failure to comply with the condition of the policy requiring such an affidavit.
   (ii) That if the affidavit contained the necessary information as to the time, amount, and circumstances of the loss, it was sufficient, though the insured was insane when it was made.
2. A policy for $10,000 was signed by four companies, each of whom agreed to become liable for one-fourth of the loss to that extent. *Held,*
   (i) That one action could be brought against them all by their consent; the declaration charging the separate promises and praying for separate judgment.
   (ii) That a verdict finding that the defendants did assume in manner and form as in the declaration alleged, and assessing the whole damages at $10,000, was a good verdict in such action.
   (iii) That the judgment rendered in such verdict should have been against each defendant for one-fourth of the damages, and against them jointly for the costs, and that a joint judgment against them all on the whole sum was erroneous and should be reversed.
   (iv) That this court, instead of awarding a *venire facias de novo*, must, under the 24th section of the Judiciary Act, as well as by the common law powers of a court of error, render the judgment which the Circuit Court ought to have rendered on that verdict.

8. Such a judgment was accordingly certified to the Circuit Court, to be there enforced by execution.

ERROR to the Circuit Court for the District of South Carolina, the case being this :

Boykin caused his house to be insured against fire by one single policy in four different insurance companies to the extent of $10,000, " each company," as the policy declared, " acting for itself, and not one for the other or others." The policy contained a provision, that in case of loss the assured should " render a particular account of such loss, signed and sworn to by him, and when and where the fire originated," &c. Boykin did accordingly send an affidavit, in which, after giving the particulars of the loss, he proceeded further to state that he believed the buildings had been set on fire by an incendiary ; that he had heard of repeated threats of a person whom he named that he would burn the premises, and that it was in consequence of these threats that he had procured the insurance which he was then seeking to recover. When this affidavit was laid before the insurance companies they refused to pay, and gave notice to Boykin that they considered the policy void.

Boykin then sued all four companies in one action. The declaration being demurred to, the demurrer was sustained. On the back of this declaration there was this statement, signed by the counsel of all four insurance companies :

. " This action, by consent of the undersigned, was brought jointly instead of severally."

An amended declaration was then filed containing two counts, both being special upon the policy, setting forth very distinctly the promises of the defendants *as several and not joint*, and averring performance on the plaintiff's part of all things on his part to be performed.

In the course of the trial the bill of exceptions showed the plaintiff offered in evidence certain affidavits, being marked " Exhibit 4." The defendants objected to them. The objection was overruled, and the affidavits read. But they

were not given in the record nor described otherwise than as something "marked Exhibit 4."

Testimony was also given to show that when Boykin made the affidavit above referred to, of the fact and manner of the fire, he was insane. Based on these facts the defendant asked six instructions, the substance of which was that they had a right to proof of loss by an intelligent being, and that if the plaintiff was insane no such proof had been given, and if he were sane then his affidavit showed such fraud as should de-. feat recovery; the last proposition, however, not being put in the form of a separate point. The court refused the instructions asked for, and charged the jury in its own way, presenting its views fully and elaborately, upon the law and the facts of the case.

To this charge the defendants excepted generally; not specifying any particular part of the charge, nor any particular proposition of it.

The verdict was, "that the said defendants did promise and assume, *as the said plaintiff hath alleged,* and they assess the damages of the said plaintiff at $10,000, with interest from the 20th of March, 1867," the date when the loss was payable. A joint judgment being given accordingly, the four companies brought the case here; assigning for error as to this particular that the action had been sustained, and judgment given against all the companies jointly.

*Messrs. Carlisle and McPherson, for the plaintiffs in error; Mr. W. W. Boyce, contra.*

Mr. Justice MILLER delivered the opinion of the court.

1. The exception as to the introduction of testimony relates to four affidavits, which are referred to in the bill of exceptions as "Exhibit 4." There is no such exhibit in the record, nor anything else which can be identified as either of these affidavits. We cannot, therefore, determine whether their admission damaged the defence or not, and the assignment of error based on this exception must be overruled.

2. The assignment which alleges error in the charge of

the judge is equally unfortunate. The charge is a very full and elaborate discussion of the law and the facts of the case, and no particular part of the charge, nor any special proposition of law found in it, is excepted to. We have repeatedly held that a general exception to the whole of such a charge is insufficient.

3. The exception to the refusal of the court to charge as requested may, with a little liberality, be held sufficient.

Based on the facts of the case the defendants at the trial asked instructions, the substance of which is condensed in the proposition that they had a right to proof of loss by an intelligent being, and if plaintiff was insane no such proof had been given, and if he were sane then his affidavit showed such fraud as should defeat recovery. The last of·these propositions is not denied, but was not asked as an independent instruction. But the first is too repugnant to justice and humanity to merit serious consideration. There are two obvious answers to it. First, the affidavit, whether of an insane man or not, is sufficient in the information which it conveys of the time, the nature, and amount of the loss. Second, if he was so insane as to be incapable of making an intelligent statement, this would of itself excuse that condition of the policy. It is argued that plaintiff, having averred in his declaration that he did give them this information under oath, he cannot now be permitted to show an excuse by his insanity for not doing it. But as already seen his affidavit does literally prove the allegation, and if it contains something more which was the result of insanity, that does not vitiate what is well and truly stated in the affidavit. We are of opinion that all these prayers for instruction were properly rejected.

The remaining assignment of error is that the action was sustained and judgment given against all the defendant companies jointly.

We need not stop to inquire whether the action in this form should have been sustained if objection had been made at the proper stage of the suit, for by an express written agreement found in the record, defendants, by their counsel,

consented that the action should be brought jointly instead of severally. As their liability depended on the same evidence and was founded on the same policy, and as their defence rested on the same issues, to be supported by the same testimony, it was manifestly for their interest to have but one trial, and no reason is apparent to us wh; this could not be done by consent. But the terms of this consent did not authorize the court to render a joint judgment, by which each company would be bound for the whole loss. This was not their contract, and it may be doubted if their counsel could have bound them by such an agreement if they had intended it. The judgment of the court, therefore, which is against the defendants jointly and not severally for the full amount of the policy, with interest, is erroneous and must be reversed.

But this error does not extend to the verdict. The amended declaration sets forth very distinctly the promises of the defendants as several and not joint, and the verdict of the jury is, "that the said defendants did promise and assume, as the said plaintiff hath alleged, and they assess the damages of the said plaintiff at ten thousand dollars, with interest from the 20th of March, 1867." The verdict of the jury, therefore, finds the amount of plaintiff's damages or loss, and that each of the defendants had promised and assumed to pay one-fourth thereof, which is manifestly a good verdict, responsive to the issues and to the contract of the defendants. The Circuit Court ought to have rendered a judgment that plaintiff recover of each of said defendants, severally, a sum which would have been the one-fourth part of the $10,000, and interest from the time mentioned in the verdict, and a joint judgment against all the defendants for costs. While we are bound, therefore, to reverse the judgment of that court the foregoing statement indicates very clearly the judgment which this court must render under the twenty-fourth section of the Judiciary Act. That section enacts that where a judgment or decree shall be reversed in a Circuit Court, such court shall proceed to render such judgment or pass such decree

as the District Court should have rendered or passed; and the Supreme Court shall do the same in reversals therein, except when the reversal is in favor of the plaintiff or petitioner in the original suit, and the damages to be assessed, or matter to be decreed, are uncertain; in which case they shall remand the cause for final decision. As the case before us does not come within the exception above mentioned, it is our duty to render the judgment which we have shown that the Circuit Court should have rendered. The process, the pleadings, the trial, and the verdict are without error, and it surely cannot be necessary to set aside this verdict and award a new trial because the judgment which was rendered on that verdict was erroneous. And this was also the rule by which courts of error were governed at the common law. Indeed, it was for a long time denied that a court of error could award a *venire facias de novo.* In the case of *Philips* v. *Bury*, reported at great length in Skinner,[*] which was an action in the King's Bench and writ of error to the Peers, who reversed the judgment below, the case was carried back and forward several times between the Peers and the King's Bench on the question of which court should render the judgment on the verdict, and it was finally settled that the House of Lords should give the judgment which the King's Bench ought to have given, Eyre, C. J., saying that where judgment is upon a verdict, if they reverse a judgment they ought to give the same judgment that ought to have been given at first, and that judgment ought to be sent to the court below. So in *Slocomb's Case*, Cro. Car.,[†] on a general verdict where judgment was reversed in the King's Bench, it was, in the language of the reporter, "agreed by all the court, if the declaration and verdict be good, then judgment ought to be given for plaintiff, whereof Jones at first doubted, but at last agreed thereto, for we are to give such judgment as they ought to have given there." In 1 Salkeld,[‡] it is said: "If judgment be below for plaintiff and error is brought

---

[*] Page 447.                                    [†] Page 442.

[‡] Page 401; see also Butcher *v.* Porter, 1 Shower, 400.

and that judgment reversed, yet if the record will warrant it the court ought to give a new judgment for the plaintiff," which is precisely the case before us.   And in *Mellor* v. *Moore*,\* on the authority of these and other cases, the court of Exchequer Chamber held that when a judgment is reversed on demurrer in favor of plaintiff, the case is sent down and a writ of inquiry goes, but when it is upon a verdict they should give the same judgment that ought to have been given at first, and that judgment ought to be sent below.   In *Gildart* v. *Gladstone*,† on a case from the Common Pleas having been reversed on a special verdict, Lord Ellenborough said: "The court are bound, *ex officio*, to give a perfect judgment upon the record before them."

The provisions of our statute of 1789, already cited, show that the lawyers who framed it were familiar with the doubts which seemed at that time to beset the courts in England as to the precise judgment to be rendered in a court of errors on reversing a judgment, and they in plain language prescribed the rule which has since become the settled law of the English courts on the same subject.

The judgment will be REVERSED and a judgment certified to the Circuit Court for plaintiff against each of the defendants for the one-fourth of amount of the plaintiff's damages, including interest, as ascertained by the verdict, and for a joint judgment against them all for the costs in that court.

Mr. Justice STRONG concurred in the judgment of reversal, but thought there should be a *venire de novo*.   He stated his opinion to be that the verdict did not warrant the entry of such judgments as had just been directed.

---

\* 1 Bosanquet & Puller, 30.                   † 12 East, 668.