## 1609. NORTH AMERICAN ACCIDENT INSURANCE COMPANY v. WATSON.

1. A condition in a policy of insurance for sick benefits, requiring that written notice of the sickness for which the benefit is claimed shall be given to the company within ten days from the commencement of the sickness, under penalty of forfeiture, unless expressly stipulated to be a condition precedent, will be treated as a condition subsequent, and given a liberal construction in favor of the beneficiary of the policy.

2. Where the insured was suddenly stricken with some disease of the brain, which rendered him unconscious and made it impossible for him to give to the company written notice of his sickness, within the time stipulated, this fact was legally sufficient to exclude him from a compliance with this condition of the policy during the existence of such disability.

3. Although the time in which the insured shall give to the company notice of his sickness is fixed by the contract, if his sickness makes a literal compliance impossible he will be excused for the failure, if he complies with his contract in this respect within a reasonable time after it becomes possible for him to do so, or within the time stipulated after the cause preventing compliance ceases to exist.

4. The burden is on the insured to excuse his failure to comply with the plain, unambiguous terms of his contract. In this case the insured did not successfully carry ·this burden, and the evidence affirmatively shows that he failed to exercise reasonable diligence in complying with the terms of the contract requiring him to give written notice to the insurance company of the commencement of the sickness for which he claimed a benefit.

RUSSELL, J., dissenting. In construing contracts of insurance, the substance should be preserved, and the intention of the parties effected, regardless of immaterial stipulations. If it is the purpose of the contract to furnish indemnity against loss, it is to be presumed that conditions subsequent in a contract of insurance will be limited to those objects which were in the contemplation of the parties when making the contract. Insurance is designed to afford proper protection, and not to provide for profitable speculation. In my opinion, it is for the jury to say, from the facts and circumstances adduced in evidence, whether the conditions subsequent in a policy of insurance are immaterial or material, and, if material, whether they were reasonably complied with; and, therefore, it was for the jury to say whether the notice of the insured's sickness was given the company within a reasonable time. The evidence was sufficient, in my judgment, to support the verdict of the jury and to authorize their finding that the insured complied with his contract within a reasonable time after it became possible for'him to do so.

Action on insurance policy, from Fulton superior court—Judge Ellis. December 2, 1908.

Submitted February 24,—Decided May 18, 1909.

*Tye, Peeples, Bryan & Jordan,* for plaintiff in error.

*Smith, Hammond & Smith, F. L. Neufville,* contra.

HILL, C. J.    Watson sued the North American Insurance Company in a justice's court for $100, claimed as a sick benefit under a policy issued to him by the company.    He obtained a judgment for the full amount, and, on appeal to the superior court, the jury found a verdict in his favor for this amount.    The company filed a motion for a new trial, which was overruled.    The insurance company defended on the sole ground that the plaintiff had forfeited his right to the sick benefit claimed by him under the policy, because of his failure to comply with the following express condition thereof:    "Written notice of any injury, fatal or non-fatal, or of any sickness for which claim can be made, shall be given to the company at its home office at Chicago, within ten days of the occurrence of the accident or commencement of the sickness, and failure to give such written notice within ten days from the date when it becomes possible to give such notice of injury, or, in case of sickness, within ten days from date of commencement of sickness, shall invalidate any and all claims under this policy."    The company admitted that it had received written notice from the plaintiff of his sickness, but claimed that this notice had not been received by it, either at its home office in Chicago or elsewhere, within ten days from the commencement of the plaintiff's sickness, as required by this stipulation of the policy.    The plaintiff replied to this defense by the allegation that he had been providentially prevented from giving the written notice within the ten days, because of mental and physical incapacity caused by his sickness; and that, after he had recovered sufficiently to give the notice required by this condition of his policy, he did so with all reasonable and proper diligence.    By an amendment to his petition he alleged that the company had waived his failure to give the notice within the time stipulated, by sending to him, through its agent, a blank form for the purpose of having him prepare and send the notice to it, which he did as soon as he received the blank.    The question for decision arises on the construction of this condition of the contract.

Some authorities hold, that where the language is plain and unambiguous, and mandatory in its character, its terms can not be enlarged by judicial construction, but demand strict compliance with the letter of the contract, and that liability can not in any event survive a failure to comply literally with its requirements

in this respect.    Gamble *v.* Accident Assurance Co., 4 Ir. R. C. L. 204; Patton *v.* Employers' Liability Assurance Corporation, 20 Law. Rep. (Ir.) 93.    Other authorities take a more liberal view, and hold that stipulations as to time in which notice of injury, loss, or sickness, for which indemnity is claimed, is required to be given, are not necessarily and in every instance to be literally complied with in order to prevent a forfeiture of the policy.    Unless these provisions are expressly stipulated to be conditions precedent, they should be treated as conditions subsequent and given a liberal construction in favor of the beneficiary of the policy, to prevent a forfeiture.    The condition that notice shall be given operates upon the contract of insurance only subsequently to the fact of loss, injury, or sickness, and it should, therefore, receive a liberal and reasonable construction in favor of the beneficiary under the contract.    Niblack on Accident Insurance and Benefit Societies, §417; Woodmen Accident Association *v.* Pratt, 67 Neb. 673 (87 N. W. 546, 55 L. R. A. 291, 89 Am. St. R. 777).    It is settled by an overwhelming weight of authority that where the failure to give prompt notice is not due to the negligence of the insured or the beneficiary, but such compliance has been prevented and rendered impossible by an act of God, this would furnish a sufficient legal excuse for the delay in giving the stipulated notice; and this doctrine has been applied in cases in which a specified time for the giving of the notice has been fixed by the contract.    The theory of these cases, as stated by Cooley (4 Briefs on the Law of Insurance, 3462) is that "it could not have been in the contemplation of the parties that if the insured, who was required to give the notice, was unable to do so by reason of the very accident against which indemnity was given, he should therefore lose such indemnity through no fault of his own."    Reed *v.* Loyal Protective Asso. (Mich.), 117 N. W. 600, 37 Ins. Law Jour. 1024; Brown *v.* Fraternal Acc. Asso., 18 Utah, 265 (55 Pac. 63); Comstock *v.* Fraternal Accident Asso., 116 Wis. 382 (93 N. W. 22); Hayes *v.* Continental Casualty Co., 98 Mo. App. 410 (72 S. W. 135); Insurance Company *v.* Boykin, 12 Wall. 433 (20 L. ed. 442); Woodmen Accident Association *v.* Pratt, supra.    The Supreme Court of Georgia, in the case of *United Benefit Society* v. *Freeman,* 111 *Ga.* 355 (36 S. E. 764), where the condition as to notice to be given was expressly stipulated to be a condition precedent, clearly

recognizes that impossibility of performance by the insured would be a sufficient legal excuse for a failure to give the notice within the time required by the terms of the policy. In that case the court holds, however, that the evidence was not sufficient to support the finding that it was impossible for the plaintiff to give the notice to the society within ten days from the date of his injury.

.We deduce the proposition from the authorities cited that where the insured is suddenly stricken with some disease of the brain which renders him unconscious and makes it impossible for him to give to the company, within the time stipulated, written notice of his sickness, this fact is legally sufficient to excuse him from a compliance with this condition of the policy during the existence of such disability. We are also of the opinion that, although the time in which the insured should give to the company written notice of his sickness is fixed, if the sickness itself makes a literal compliance impossible, giving the notice required within a reasonable time after it becomes possible to do so, or, within the time stipulated after the cause preventing prior compliance has ceased to exist, would be sufficient to prevent a forfeiture. McFarland *v.* U. S. Mutual Accident Asso., 124 Mo. 204 (27 S. W. 436); Woodmen Accident Association *v.* Pratt, supra. The questions of the sufficiency of the excuse offered, and the diligence of the beneficiary in giving the notice after the removal of the disability, are generally questions of fact, to be determined by the jury, according to the nature and circumstances of each individual case.

The material facts in the case now under consideration are not controverted. On July 20, 1907, the insured, while walking on the streets in Macon, was suddenly stricken with some disease of the brain which rendered him unconscious. He was taken to a hospital, where he remained under constant treatment for sixteen days. During the first five days he was totally unconscious; in the remainder of the time he had lucid intervals, but, according to the testimony of his physician, during the entire sixteen days he was incapable of transacting any business. On August 5 he was sufficiently restored to be removed to his home, some ten miles in the country. According to his own testimony, as soon as he arrived at his home, he sent for his family physician, and on the next day after his arrival he secured his policy, with a blank copy of the notice required to be given of his sickness, and asked the

physician to aid him in making it out by filling in the statement to be made as to his condition by his attending physician. The doctor suggested that the physician who had attended him while he was in the hospital in Macon was the proper one to make this statement, and, acting on this suggestion, the blank was enclosed and sent through the mail to this physician at Macon, with the request that he complete it and return it to the insured. The insured further testified, that he did not hear from the physician in Macon for some time, and he thereupon wrote him a letter asking the cause of the delay, and received a reply stating that the blank notice had been misplaced. It does not appear definitely in the testimony how long the insured waited before writing this second letter to the physician in Macon, but it is fairly deducible from the testimony that he did wait for several weeks; for he testified that immediately on hearing from the physician, he wrote to the agent of the company at Atlanta, on the 29th of August, requesting him to send him another blank notice, which notice he received on the 30th of August, and that he thereupon filled out the notice and mailed it to the company at Chicago, and it was received by the company on the 9th of September. It therefore appears that the company did not receive the stipulated notice for a period of fifty days from the time the insured was first stricken with the sickness for which he claimed the benefit. It is clearly established by the evidence that he was mentally and physically incapable of transacting any business or complying with the condition of the policy as to the notice during the first sixteen days of his sickness, and while he was in the hospital in Macon, but it does not appear that this disability continued to exist after his arrival at his home on August 5. It does appear, from his own evidence, that immediately on his arrival at home he realized the importance of sending the notice to the company, and undertook to do so. It is reasonable, therefore, to infer that he was mentally and physically capable of complying with this stipulation of his contract from the time of his arrival at home on August 5 to the time when he did actually comply with it by sending the notice which was received by the company on September 9. Whether he exercised all reasonable diligence during this time in complying with the requirements of his policy would be a question for determination by the jury, if, under his own testimony, there was any doubt on the

question. It is true, he states generally that for the entire ten weeks of his sickness he was unable to attend to business, and was really not able to attend to business when he did return to his work on September 28; but this general conclusion of his can not overcome the specific facts stated by him showing that he was mentally and physically able to attend to the giving of the notice to the company under his contract, for, as a matter of fact, he did send the notice to his physician at Macon on August 6. No reason appears why he could not have sent this notice directly to the company. It does not appear that any special form of notice was necessary. The condition of the policy simply required that written notice of his sickness should be given to the company at Chicago. It seems, too, that he was guilty of laches in waiting for at least three weeks to hear from the physician in Macon before writing to him to know the cause of the delay. He does not give any reason why it was necessary for him to wait so long a time. The law imposed upon him the burden of showing, by a preponderance of the evidence, that he was incapable, mentally or physically, of complying with this requirement of his policy from the time that he was taken sick to the time when he did actually comply with it by sending the notice. It was his duty to show, to the satisfaction of the jury, that he was incapable, on account of his physical or mental condition, of giving this notice, either within ten days after his disability to do so had been removed, which was the measure of diligence agreed on by the parties to the contract, or, at least, that in the exercise of all reasonable diligence he could not have done so sooner than when he did actually give the notice as required by his contract. The defense set up in this case can not be regarded as purely technical. There are substantial reasons why notice or the commencement of the sickness within the time stipulated, or, at least, within a reasonable time thereafter, would be important to the company for the purpose of determining its liability for the benefit claimed. While this court is reluctant to adopt any construction of an insurance contract which would deprive the insured of the benefits of his policy, and will not do so unless convinced that such construction is demanded by the law and the evidence, under the facts of this case we are clearly of the opinion that the plaintiff not only failed to carry the burden which the law imposed upon him, but did, by his own testimony, affirmatively show

that he failed to comply with the plain, unambiguous terms of his contract without a sufficient legal excuse.

There is no evidence whatever that the company waived a performance by the plaintiff of this condition of the contract. The only evidence relied upon by the plaintiff as showing a waiver is the fact that the company's agent at Atlanta sent him a blank for the purpose of giving the notice. But it is undisputed that the agent did not know that the plaintiff had been sick, or that he had not given the notice as required, when he sent the blank in compliance with his request. In his letter to the agent asking for a blank, the plaintiff did not inform him even that he had been sick, and in the letter there was no intimation given to the agent that the plaintiff had forfeited the benefits of his policy by a failure to comply with any of its conditions. *Judgment reversed.*

POWELL, J., specially concurring. I agree that the condition as to notice is prima facie reasonable. I agree that the time during which the insured was, by reason of his mental incapacity, prevented from sending the notice is not to be counted as a part of the ten days. I think, however, that when he had had ten days, after excluding from the calculation the period of his mental and physical incapacity, to send the notice, and had not sent it, his right to sue on the policy ended.

RUSSELL, J., dissenting. I concur in the propositions stated in the first three headnotes, but I can not agree to set aside the finding of the jury in this case upon a question which it was their sole province to determine. It is conceded, in the opinion of the majority, that the stipulation of the contract which affords the insurance company its sole excuse for claiming a forfeiture of the sick benefits which the jury found that the defendant in error was entitled to recover (to wit, the condition that "written notice of any injury, fatal or non-fatal, or of any sickness for which claim can be made, shall be given to the company at its home office at Chicago, within ten days of the occurrence of the accident or commencement of the sickness, and failure to give such written notice . . in case of sickness, within ten days from date of commencement of sickness, shall invalidate any and all claims under this policy") must be treated as a condition subsequent, and not as a condition precedent, nor as an essential warranty on the part of the insured.

In *Southern Life Ins. Co.* v. *Wilkinson*, 53 *Ga.* 536, the Supreme Court held that if there was any variation in the conditions of the policy which changed the nature or extent or character of the risk, failure to fulfill the conditions would avoid the policy, but held further, in the sixth division of the opinion, that "the question as to giving notice of the death of the person whose life was insured, to the company within a reasonable time, was one for the jury, under proper instructions, to be given in the charge, and was not to be absolutely passed upon by the court." And the court ruled that it was not error to refuse to charge the jury as requested by the insurance company, that a delay for several months to give notice of the death of the party whose life was insured would be failure to give notice in a reasonable time. I conceive the proper rule as to conditions subsequent in a policy of insurance, such as to give notice, similar to that embodied in the contract now under consideration, to be that the stipulation will be held to be complied with if there is compliance within a reasonable time, and that the jury are the sole judges as to whether such conditions subsequent have been reasonably complied with. Unlike conditions precedent, conditions subsequent, embodied in a contract of insurance, do not affect the nature, extent, or character of the risk; and if the conditions precedent (or warranties on the part of the insured) are shown to have been fulfilled, and the insured has paid all the premiums which by his contract he has been required to pay, no construction should be indulged which would enable the insurer, by the use of an unsubstantial technicality, to defeat an honest claim of the insured to the indemnity promised him by the contract. The great learning of Judge Bleckley was never more pithily expressed than in the statement, "Insurance is *business,* and not elaborate and expensive trifling." *Mobile Fire Department Ins. Co.* v. *Coleman,* 58 *Ga.* 257.

In this case my brethren, conceding that the evidence shows that the insured could not give the stipulated notice within the ten days required by the contract, and admitting that within a certain period thereafter a notice would have been efficacious, nevertheless hold that the notice given by the insured at a later period, by a few days, comes too late, and the insured's benefits must be lost to him because notice was not given three weeks sooner. Of what materiality is this stipulation? If it be reasonable at all, espe-

cially as to the requirement that notice of a fatal accident shall be given within ten days or else the benefits will be lost (although no one but the deceased may know that he has a policy, and it may not be discovered for more than ten days after his death by accident), and if it be conceded that there may be instances of reasonable cause for delay, and that notice may be given after the ten days, which can properly be held to have been given within a reasonable time, then it seems to me clear that it is for the jury, and for the jury alone, judging the question by the peculiar facts of the special case before them, to determine whether the condition has been so substantially complied with as to render the fact that it was not sooner complied with immaterial. In my opinion (based upon that of Chief Justice Bleckley), when one pays his money for insurance, whether it be life, fire, or accident insurance, and the bona fides of his claim for indemnity under the contract of insurance can not be questioned, no stipulation of the contract which is immaterial in the ascertainment of the honesty and justness of the claim should be permitted to defeat his just demand. If it be said that the purpose of the notice is to give the insurer an opportunity of ascertaining whether the insured was really sick, and the notice confessedly was not given until after the insured was well, how can it be said that the rights of the insurance company were materially affected by the notice having been given three weeks and four days after the insured recovered from his sickness, rather than two days after he had actually recovered? As said by Judge Bleckley in the *Coleman* case, supra, "The Code governs the contract, and the construction of the Code is settled, to the effect that what is wholly immaterial to the risk is so utterly immaterial that the yea or nay of it will not render the policy void If this be the true meaning of the Code, even an express stipulation by the parties, that the validity of the policy shall depend upon immaterial as well as material matters, is, at bottom, an attempt to repeal the law. Such a stipulation is itself immaterial, in the sense of being idle and nugatory. The Code, instead of relegating to the parties the subject of materiality, holds possession of it for rational and honest adjudication by the tribunals of the country. Whoever makes a contract of insurance in this State must submit to have its force and effect governed by the statutory provisions applicable to that class of contracts. There is a public

policy involved in standing by substance.   Insurance is *business,* and not elaborate and expensive trifling.   Of course, what is in any degree material should be allowed its due effect; but the absolutely immaterial should count for nothing." This was the criterion established by the Supreme Court for determining as to the binding force even of representations of the assured warranted to be true.   And much less then should a condition subsequent, which, in my view, is utterly immaterial to the validity of the contract, and which does not touch its substance, be permitted to defeat a claim whose honesty is unchallenged, and whose merit has been asserted by the solemn verdict of a jury.

If Watson had never given any notice, and the circumstances had been such as to authorize the jury to find that he was not excused therefrom, the circumstance that he had failed to give the notice might tend to discredit the bona fides of his claim, but mere failure to give notice could not defeat it if a jury was authorized to find, and did find, that the circumstances were such as that he was excused from giving notice.   I think that the jury were authorized to find that Watson (whom the evidence does not show to have been well, although convalescent) was as much to be relieved from literal compliance with the stipulation in regard to the ten days' notice at the time when the notice was finally sent as he could properly have been excused (according to the opinion of my brethren) at the time that he first sent the notice to the physician. As to whether the notice, if ever given, was given in a reasonable time, was a question purely for the jury, and their finding, approved by the learned trial judge, meets my hearty concurrence. If it is the purpose of a contract of insurance to honestly furnish indemnity against loss, the substance of the contract should be preserved, regardless of immaterial technical stipulations.   It is not to be supposed that it was within the contemplation of the parties to this contract of insurance that an honest claim for indemnity, purchased by the insured's payment of the required premiums for that sole purpose, should be defeated because of non-compliance with stipulations designed solely for the protection of the insurer against fraud, and where it could not be contended that compliance would either increase or diminish the true amount to which the beneficiary would be entitled in return for the premiums. Insurance premiums are designed not wholly for the profit of the

insurer, but also partly for the protection of the insured. The presumption may be indulged that the insurer caused conditions subsequent to be engrafted for his proper protection against fraud; but if provisions are inserted which apparently can serve no purpose other than to afford an excuse to defeat a liability which, according to the substance of the contract, is just, such stipulation should be disregarded, as immoral, illegal, and void. In construing the conditions subsequent in a contract of insurance, it can properly be assumed that proper protection, and not profitable peculation, was what was within the contemplation of the parties at the time of the contract.