IDA MCCOY et al., Appellants, v. NEW YORK LIFE INSURANCE COMPANY, Appellee.

No. 42619.

JANUARY 15, 1935.

J. W. Morse, for appellants.

Milchrist, Schmidt, Marshall & Jepson, for appellee.

MITCHELL, J.—On July 28, 1927, the New York Life Insurance Company issued a policy upon the life of Raymond E. McCoy. The first annual premium, amounting to $39.22, was paid on July 28, 1927, and a like sum on July 28, 1928. No subsequent premiums were ever paid. On the 17th of February, 1929, while the policy was in full force, the premium having been paid, Raymond E. McCoy became insane, and was on or about the 27th of May, 1929, duly and regularly adjudged to be insane by the insane commissioners of Dickinson county, Iowa, and was confined in the Iowa State Hospital for the insane at Cherokee, Iowa, from that date until June 7, 1933, at which time he died.

There is no dispute in regard to the facts in this case. The case was submitted upon a stipulation, and that stipulation states, among other things, that from February 17, 1929, until the death of the insured, on June 7, 1933, the said insured was totally and permanently disabled from performing any work or following any occupation or engaging in any business for profit; that during all of said period he was insane and was confined in the State Hospital for the insane.

The policy which the New York Life Insurance Company had issued provided for the payment of disability benefits as follows:

"Upon receipt at the Company's Home Office, before default in payment of premium, of due proof that the Insured is totally disabled as above defined, and will be continuously so totally disabled for life, or if the proof submitted is not conclusive as to the permanency of such disability, but establishes that the Insured is, and for a period of not less than three consecutive months

immediately preceding receipt of proof has been, totally disabled as above defined, the following benefits will be granted:

"(a) Waiver of Premium.—The Company will waive the payment of any premium falling due during the period of continuous total disability, the premium waived to be the annual, semi-annual or quarterly premium according to the mode of payment in effect when disability occurred.

"(b) Increasing Income Payments.—The Company will pay to the Insured the monthly income stated on the first page hereof ($10 per $1,000 of the face of this policy) for each completed month from the commencement of and during the period of continuous total disability. The amount of the monthly income shall increase after sixty consecutive monthly payments have been made to one and one-half times such amount, and after sixty further consecutive monthly payments have been made to twice such amount. If disability results from insanity, payment will be made to the beneficiary in lieu of the Insured.   *   *   *"

On December 3, 1929, the insurance company, in accordance with provisions of its policy, declared a dividend to the said insured, Raymond E. McCoy, in the sum of $7.86, and on said date mailed by United States mail a check payable to the order of said insured for said sum. Thereafter, on or about April 5, 1930, the insurance company wrote a letter to the insured, calling his attention to the outstanding dividend check, asking that said check be cashed.

On or about June, 1930, E. E. Shelledy of Spirit Lake, Iowa, who was the agent of the New York Life Insurance Company who solicited the insurance from Raymond E. McCoy, was requested by the insurance company to call at the home of McCoy in regard to the dividend check which had been sent out months before and had not been cashed.   In compliance with the request of his employers, the New York Life Insurance Company, Shelledy proceeded to the former home of the insured.   When he arrived there, he inquired as to where Raymond E. McCoy was, and was informed that he was confined in the Insane Hospital at Cherokee, Iowa. He then asked the appellants in the case at bar, who were the beneficiaries of the policy, as to the dividend check which the company had sent to McCoy, and they informed him they knew of no such dividend check, and they then and there informed him that they had never heard or had any knowledge of the fact that an

insurance policy had been issued by the New York Life Insurance Company. An investigation was then made of certain papers belonging to the said Raymond E. McCoy, and they found the unopened letter containing the dividend check from the New York Life Insurance Company, and also discovered the policy of insurance. The dividend check and the policy were turned over to the agent of the insurance company, who offered to prepare and furnish to appellants forms for making proof of permanent disability of the insured. And Shelledy immediately wrote to the insurance company, informing them of the facts in the case. Thereafter the insurance company wrote a letter that, due to the insured's condition, they would be unable to pay the dividend until there was a guardian appointed and a certified copy of the appointment forwarded to the home office. Shortly after the death of the insured, which occurred on June 7, 1933, Mr. Shelledy, the agent of the New York Life Insurance Company at Spirit Lake, Iowa, was notified of his death and was asked for the proper blanks to make proof of death. On June 21, 1933, the New York Life Insurance Company wrote to the McCoys, appellants in this case, denying liability and informing them that at the time of the death of Raymond E. McCoy the policy of insurance they had written had no value and he carried no insurance with their company.

The New York Life Insurance Company having denied liability, the appellants commenced an action to recover upon said policy. A jury was waived, and the case was tried to the court. The lower court held in favor of the insurance company and judgment was entered against the appellants for the costs. Being dissatisfied, they have appealed to this court.

It is the contention of the appellants that, for the reason that total disability of the insured arose while the policy was in force. and was of a character totally incapacitating the insured from giving notice or of furnishing proofs of such total disability, he was excused from complying strictly with the terms of the policy, and it therefore did not lapse.

The following facts should be kept in mind: First: The policy was issued by the New York Life Insurance. Company and at the time that the insured became totally and permanently disabled the policy was in full force and effect, the premium having been paid for that year by the insured. Second. It was absolutely impossible for the insured to give the notice which the company now claims

should have been given, due to his mental condition, and it was impossible for any one else to give the notice because the undisputed record shows that the beneficiaries had no knowledge that the insured had taken out the policy; in fact, no one knew anything about the issuing of the policy with the exception of the insurance company and the unfortunate insured. Third. The insured was totally and permanently disabled from February 17, 1929, to the date of his death. Fourth. The policy provided for the waiver of premium and the payment of $10 per month during total and permanent disability.

The controversy in the case at bar is one as to which the courts of the country are arrayed in opposing camps. In the case of Johnson v. Mutual Life Insurance Co. of New York, reported in 70 F.(2d) 41, the Circuit Court of Appeals for the Fourth Circuit was confronted with the very question involved in the case at bar, and in a very able opinion it reviews the leading cases of the country. In that opinion the court said, at pages 44 and 45:

"There remains the question whether the case should have been submitted to the jury with instructions that the insured's failure to furnish proof of disability to the company before default was excused, if the jury should find from the evidence a mental or physical incapacity of the insured, which rendered it impossible for him to make the proof. It is strongly urged by the defendant that such an excuse is ineffectual in view of the clear and unequivocal language of the present policy. It is said that most of the cases which uphold the excuse, where the impossibility of furnishing proofs is shown, are cases involving policies of accident or fire insurance, in which some language may be found in the condition to indicate that the furnishing of proofs is required only when it is reasonably possible to furnish them. Stress is furthermore placed upon the fact that the condition of the policy in the present case is a condition precedent, and that in some of the cited cases the condition is regarded as subsequent.

"It must be conceded that the position of the defendant finds support in cases from two jurisdictions. New England Mutual Life Ins. Co. v. Reynolds, 217 Ala. 307, 116 So. 151, 59 A. L. R. 1075; Whiteside v. North American Acc. Ins. Co., 200 N. Y. 320, 93 N. E. 948, 35 L. R. A. (N. S.) 696. An overwhelming majority of the state courts that have passed upon the matter have, however, laid down the rule that a condition precedent requiring notice or proof

of disability is excused where its performance is impossible by reason of the physical or mental incapacity of the insured, as where the insured is insane or unconscious during the period when proof should have been furnished, and that the condition may be performed within a reasonable time after the incapacity is removed. Swann v. Atlantic Life Ins. Co., 156 Va. 852, 159 S. E. 192; Rhyne v. Jefferson Standard L. Ins. Co., 196 N. C. 717, 147 S. E. 6; Id., 199 N. C. 419, 154 S. E. 749; Levan v. Metropolitan Life Ins. Co., 138 S. C. 253, 136 S. E. 304; Roseberry v. American Benev. Ass'n., 142 Mo. App. 552, 121 S. W. 785; Continental Casualty Co. v. Mathis, 150 Ky. 477, 150 S. W. 507; Comstock v. Fraternal Acc. Ass'n. of America, 116 Wis. 382, 93 N. W. 22; Reed v. Loyal Protective Ass'n., 154 Mich. 161, 117 N. W. 600; Woodmen Acc. Ass'n. v. Pratt, 62 Neb. 673, 87 N. W. 546, 55 L. R. A. 291, 89 Am. St. Rep. 777; and see 54 A. L. R. 611, note. The same rule has been applied in two further cases, which seem to place some reliance upon a view that the particular condition involved was a condition subsequent. Pfeiffer v. Missouri St. L. Ins. Co., 174 Ark. 783, 297 S. W. 847, 54 A. L. R. 600; North American Acc. Ins. Co. v. Watson, 6 Ga. App. 193, 64 S. E. 693. Of these cases, the first three, the Swann, Rhyne, and Levan cases, and also the Pfeiffer case, involved life insurance policies with provisions for disability benefits similar in all pertinent respects to the provision here. And, although the remaining cases involve accident policies, in none of them does it appear that there was any language in the condition indicative of an intention that proof should be required only where it could reasonably be furnished. Compare Metropolitan Casualty Ins. Co. v. Johnston (C. C. A.). 247 F. 65.

"We think the rule announced by the majority of the state courts is the sound rule to apply. The situation is one where the parties may fairly be said to have contemplated a capacity to make the proof when disability should arise, for otherwise such a contract may prove a trap for the unwary by imposing conditions which incapacity may render it impossible to perform. There is, it is true, no language in the condition which qualifies it in the event that its performance should become impossible; but it is a general rule in the law of contracts, that impossibility may excuse a condition, though a condition precedent, if the existence or occurrence of the condition is no material part of the exchange for the

promisor's performance, and the discharge of the promisor will operate as a forfeiture. Restatement of Contracts, section 301; and see Illustrative Case (4). See, also, Williston on Contracts, vol. 2, section 806. This principle, furthermore, has received recognition by the Supreme Court in Insurance Companies v. Boykin, 12 Wall. 433, 436, 20 L. Ed. 442, where failure to perform a provision requiring proof of loss in a fire insurance policy was held to be excused by the insanity of the insured, the court saying that '* * * if he was so insane as to be incapable of making an intelligent statement (of the time, nature and amount of the loss), this would of itself excuse that condition of the policy.' "

It seems to us that a fair rule to follow is the one announced in the above-cited case. The insurance company received the premium which it said was sufficient to pay the insured the amounts provided in the policy in case disability occurred. Disability did occur. It occurred while the policy was in full force and effect, the premium having been paid. There is no question in this case of the liability of the insurance company or of its obligation to pay. Its only defense is, "You didn't give notice". But who could have given notice? The insured? He was mentally unable to do so. No one else knew of the issuance of the policy. The beneficiaries had no knowledge. It might be very reasonable for a company to provide that it would waive premium payments only upon notice or proof of disability when the insured is capable of giving such notice, but it is an entirely different question to assume that the insurance company would contract with the insured that he would be relieved of paying premiums if he gave notice of his disability, notwithstanding the fact that he is unable to do so. It is the incapacity of the insured which makes it positive that no such requirement was in the contemplation of the parties.

In the case at bar, in consideration of the premium which the insured paid, the insurance company agreed to pay the insured $10 per month if he should become insane, and waive further premiums. While his policy was in full force and effect, he unfortunately became insane. Being insane, he gave no notice of his disability prior to July 28, 1929, when the next premium became due. The policy provided that upon receipt at the company's home office, before default in payment of premium, of due proof that the insured was totally disabled, the company would pay him $10 per month and waive further premiums. This condition in regard to the

notice was no material part of the exchange for the promisor's performance. The insured had paid his premium exacted by the insurance company for its promise to pay him $10 per month, and while his premium was not in default he became insane, and by reason of that fact the insurance company became liable to pay him $10 per month and waive further premiums. That part of the contract which required the insured to give notice of his insanity was impossible to be performed because of the insanity of the insured, the very thing insured against. And therefore he was excused from giving notice.

It must be kept in mind that it is the general rule, of practically universal application, that forfeitures are not favored in this country, and that insurance contracts will be construed most strongly against the insurer. There can be no doubt that the New York Life Insurance Company knew when it wrote the policy which it issued to the insured, Raymond E. McCoy in this case, if the insured became insane he could not give notice. Where it is impossible, as it was in this case, to give notice, it may be fairly said that the insurance company contemplated that no notice would be given. Disability having occurred while the policy was in full force and effect, it being impossible for the insured to give the notice, the New York Life Insurance Company is liable on the policy which it wrote and for which it received the premium it demanded.

But, the appellee says, the case at bar is controlled by the case of Fairgrave v. Illinois Bankers Life Ass'n., 211 Iowa 329, 233 N. W. 714. With this we cannot agree. In the Fairgrave case the beneficiaries had knowledge of the policy and of the disability of the insured and did not give notice within the ninety-day period provided by the policy. It was not shown to have been impossible to give the notice required by the policy. In the case at bar it is conclusively shown that it was impossible to give the notice required by the policy.

The judgment of the lower court must be, and it is hereby, reversed, and this cause remanded.

ANDERSON, C. J., and KINTZINGER, POWERS, PARSONS, and HAMILTON, JJ., concur.