Sutton, J.
It appears from the provisions of the policy of insurance that in order for recovery to be had thereunder the insurer should be furnished immediate notice in ease of the accidental death of the insured; that in case of claim for accidental death proof of loss should be submitted within ninety days from the date of such death, and that <e strict compliance on the part of the insured and beneficiary with all the provisions and agreements of this policy, and the application signed by the insured, is a condition precedent to recovery and any failure in this respect shall forfeit to the Association all right to any indemnity.” While the petition alleges that the fact of death of the insured on July 29, 1936, was known to the defendant immediately after it occurred, and it appears from a copy of a letter from the defendant, which was attached to the petition as an exhibit, that the insurance company had been informed, and, inferentially, that the notice was in terms of the contract, because the company had paid certain benefits other than for death as provided also in the policy, still the fact of knowledge of death or the giving of the preliminary notice of death would not answer the requirement as to proof of loss in connection with the death risk. It is shown by the petition that in that respect no proof of loss was filed by the beneficiary, it being alleged that it was not until April 12, 1937, that she learned of the cause of the death of the insured, and that, in response to a written request from her attorney on that date that necessary forms for proof of loss be furnished, the insurer refused to comply and denied liability. The plaintiff sought to excuse her failure to furnish proof of loss within ninety days from July 29, *883 1936, the date of the death of the insured, by setting up certain facts and circumstances which are shown in the statement of the case, supra, as to which the defendant specially demurred on the ground that sufficient legal reasons were not disclosed for the failure of the beneficiary to obtain, immediately after the death of the insured, the alleged information as to the cause of his death, and that it was not disclosed from whom the plaintiff obtained the alleged information as to the cause of death, the defendant also renewing its general demurrer to the petition as amended.
“A contract may be absolute or conditional. In the former, every covenant is independent, and the breach of one does not relieve the obligation of another. In the latter, the covenants are dependent the one upon the other, and the breach of one is a release of the binding force of all dependent covenants. The classification of every contract must depend upon a rational interpretation of the intention of the parties.” Code, § 20-109. “Conditions may be precedent or subsequent. In the former, the condition must be performed before the contract becomes absolute and obligatory upon the other party. In the latter, the breach of the condition may destroy the party’s rights under the contract, or may give a right to damages to the other party, according to a true construction of the intention of the parties.” Code, § 20-110. A condition precedent requires performance by one party before performance by the other party. Winn v. Tabernacle Infirmary, 135 Ga. 380, 383 (69 S. E. 557, 32 L. R. A. (N. S.) 512); Baker v. Smith, 135 Ga. 628 (70 S. E. 239). “‘When a plaintiff’s right to recover on a contract depends upon a condition precedent to be performed by him, he must allege and prove the performance of such condition precedent, or allege a sufficient legal excuse for its non-performance.’ Griswold v. Scott, 13 Ga. 210; Life Ins. Co. of Va. v. Proctor, 18 Ga. App. 517 (89 S. E. 1088); Williams Valve Co. v. Amorous, 19 Ga. App. 156 (91 S. E. 240); Baker v. Tillman, 84 Ga. 401 (11 S. E. 355); Herrington v. Jones, 132 Ga. 209 (63 S. E. 832).” Daniel v. Dalton News Co., 48 Ga. App. 772 (173 S. E. 727).
The policy on which the present suit is brought expressly makes the furnishing of proof of loss a condition precedent to recovery. It has been ruled that where performance of a condition precedent in an insurance contract is not shown, the insured, in the absence *884 of a waiver of such requirement, “would not be liable, unless,. perhaps, the circumstances following” the loss rendered it impossible for the condition precedent to be complied with. (Italics ours.) United Benevolent Society v. Freeman, 111 Ga. 355, 356 (36 S. E. 764). In that case it was held that the facts offered as an excuse for not performing in the time required by the contract did not show that it was impossible for the insured to have complied with' the condition precedent, and that it was unnecessary to decide whether impossibility of complying would be a sufficient excuse for a failure to do so. See also Federal Life Ins. Co. v. Walton, 34 Ga. App. 694 (2) (131 S. E. 90).
In North American Insurance Co. v. Watson, 6 Ga. App. 193 (64 S. E. 693), the defendant contested the right of the plaintiff to recover under a policy which provided that “Written notice of any injury, fatal or non-fatal, or of any sickness for which claim can be made, shall be given to the company at its home office in Chicago, within ten days of the occurrence of the accident or commencement of the sickness, and failure to give such written notice within ten days from the date when it becomes possible to give such notice of injury, or, in case of sickness, within ten days from date of commencement of sickness, shall invalidate any and all claims under this policy.” The giving of such notice was not made a condition precedent, and this court held in the first headnote that unless so expressly stipulated the requirement as to notice will be treated as a condition subsequent, saying on page 195 that “It is settled by an overwhelming weight of authority that where the failure to give prompt notice is not due to the negligence of the insured or the beneficiary, but such compliance has been prevented and rendered impossible by an act of God, this would furnish a sufficient legal excuse for the delay in giving the stipulated notice; and this doctrine has been applied in cases in which a specific time for the giving of the notice has been fixed by the contract.” The plaintiff in that case sought to excuse the delay in giving notice on the ground that he had been providentially hindered by his mental and physical incapacity caused by sickness, and that when he had recovered sufficiently to give the notice he did so with all reasonable and proper diligence. For a consideration of the case sub judice we think it well to quote from the opinion in the Watson case, as follows: “On July SO, 1907, the insured, *885 while walking on the streets in Macon, was suddenly stricken with some disease of the brain which rendered him unconscious. He was taken to a hospital, where he remained under constant treatment for sixteen days. During the first five days he was totally unconscious ; in the remainder of the time he had lucid intervals, but, according to the testimony of his physician, during the entire sixteen days he was incapable of transacting any business. On August 5 he was sufficiently restored to’ be removed to his home, some ten miles in the country. According to his own testimony, as soon as he arrived at his home, he sent for his family physician, and on the next day after his arrival he secured his policy, with a blank copy of the notice required to be given of his sickness, and asked the physician to aid him in making it out by filling in the statement to be made as to his condition by his attending physician. The doctor suggested that the physician who had attended him while he was in the hospital in Macon was the proper one to make this statement, and, acting on this suggestion, the blank was enclosed and sent through the mail to this physician at Macon, with the request that he complete it and return it to the insured. The insured further testified, that he did not hear from the physician in Macon for some time, and he thereupon wrote him a letter asking the cause of the delay, and received a reply stating that the blank notice had been misplaced. It does not appear definitely in the testimony how long the insured waited before writing this second letter to the physician in Macon, but it is fairly deducible from the testimony that he did wait for several weeks; for he testified that immediately on hearing from the physician, he wrote to the agent of the company at Atlanta, on the 29th of August, requesting him to send him another blank notice, which notice he received on the 30th of August, and that he thereupon filled out the notice and mailed it to the company at Chicago, and it was received by the company on the 9th of September. It therefore appears that the company did not receive the stipulated notice for a period of fifty days from the time the insured was first stricken with the sickness for which he claimed the benefit. It is clearly established by the evidence that he was mentally and physically incapable of transacting any business or complying with the condition of the policy as to the notice during the first sixteen days of his sickness, and while he was in the hospital in Macon, but it does *886 not appear that this disability continued to exist after his arrival at his home on August 5. It does appear, from his own evidence, that immediately on his arrival at home he realized the importance of sending the notice to the company, and undertook to do so. It is reasonable, therefore, to infer that he was mentally and physically capable of complying with this stipulation of his contract from the time of his arrival at home on August 5 to the time when he did actually comply with it by sending the notice which was received by the company on September 9. Whether he exercised all reasonable diligence during this time in complying with the requirements of the policy would be a question for determination by the jury, if, under his own testimony, there was any doubt on the question. . . The law imposed upon him the burden of showing, by a preponderance of the evidence, that he was incapable, mentally or physically, of complying with this requirement of his policy from the time that he was taken sick to the time when he did actually comply with it by sending the notice. It was his duty to show, to the satisfaction of the jury, that he was incapable, on account of his physical or mental condition, of giving this notice, either within ten days after his disability to do so had been removed, which was the measure of diligence agreed on by the parties to the contract, or, at least, that in the exercise of all reasonable diligence he could not have done so sooner than when he did actually give the notice as required by his contract. The defense set up in this case can not be regarded as purely technical. There are substantial reasons why notice of the commencement of the sickness within the time stipulated, or, at least, within a reasonable time thereafter, would be important to the company for the purpose of determining its liability for the benefit claimed. While this court is reluctant to adopt any construction of an insurance contract which would deprive the insured of the benefits of his policy, and will not do so unless convinced that such construction is demanded by the law and the evidence, under the facts of this case we are clearly of the opinion that the plaintiff not only failed to carry the burden which the law imposed upon him, but did, by his own testimony, affirmatively show that he failed to comply with the plain, unambiguous terms of his contract without a sufficient legal excuse.”
The furnishing of proof of loss to the insurance company was *887 expressly made a condition precedent in the present case, and was a matter of vital importance for its determination of liability. No reason appears why the canse of death of the insured could not by reasonable diligence have been ascertained by the beneficiary. While she alleges that it was generally given out at the hospital that the insured died from an appendicitis operation, it does not appear that the beneficiary made any inquiry of those in position to know the true cause of his death or that she was barred therefrom in any way. Her allegations of old age and living at a distance of twelve miles from the hospital and having no ready means or cause to visit the City of Elberton after the death of the insured may suggest a state of inconvenience, but none is so destitute of friends or acquaintances but what one may be found who might make the necessary inquiry, on behalf of an elderly person, as to information needed in a case of this kind. It is not shown that the plaintiff was misled by those in position to know what caused the death of the insured; it is not shown that to any member of his family the hospital authorities refused to divulge the facts surrounding the insured’s death. It appears that there was simply a lack of inquiry, unfortunately superinduced by a presumption that “from what was given out at the hospital” death was not caused by accidental means. But the plaintiff’s counsel eventually ascertained the true cause of the insured’s death, and no reason appears why he, upon being solicited to do so sooner, might not have equally been so informed on July 29, 1936, or before the time required for furnishing proof of loss expired. Manifestly the plaintiff knew of the death of the insured on that date. It does not appear that the true cause of his death was not then known to the hospital authorities. Notice of the insured’s death was sufficient to put the beneficiary on inquiry, and “Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, shall be equivalent to knowledge, in fixing the rights of parties.” Code, § 37-116. The allegations of the petition do not, in our opinion, show such mental or physical incapacity as would have rendered the plaintiff incapable of making proper inquiry, through herself or others, as to the facts on which she bases her present suit, and do not show a legal excuse for not making proof of loss in the time required *888 by the contract. Consequently, the court erred in overruling the special and general demurrers of the defendant.
Although it is not alleged in the petition, it is contended in the brief of counsel for the defendant in error that proof of loss was waived by the insurance company in refusing to pay, investigate, and determine the claim of the plaintiff, and furnish blanks for filing proof of loss as set forth in its letter of April 15, 1937, a copy of which was attached to the petition as an exhibit. An absolute refusal to pay will ordinarily operate as a waiver of performance by the insured or beneficiary of the act of furnishing proof. Code, § 56-831; Moore v. Dixie Fire Ins. Co., 19 Ga. App. 800 (93 S. E. 303); Penn Mutual Life Ins. Co. v. Milton, 33 Ga. App. 634, 641 (127 S. E. 798). But, as we have held above, the plaintiff had forfeited her rights before the alleged waiver is said to have arisen, and the principle announced just above has no application where a forfeiture has already taken place and the contract has become a “dead letter." Harp v. Fireman’s Fund Ins. Co., 130 Ga. 726 (4) (61 S. E. 704, 14 Ann. Cas. 299); Penn Mutual Life Ins. Co. v. Milton, supra, and cit.
The eases cited by the defendant in error have been carefully considered, but are distinguishable on their facts, and do not require a ruling different from the one we have made.

Judgment reversed.

Stephens, P. J., and Felton, J., concur.