## BAKER *v.* SMITH.

1. In a written contract of sale of the capital stock, franchise, and physical properties of a railroad company, the vendors covenanted to immediately deliver the property to the vendees, who were to pay one fourth of the purchase-price in cash and the remainder in installments as provided in notes given therefor. The vendors further covenanted to pay all outstanding bills against the railroad company; to be responsible for and settle all claims for damages alleged to have occurred prior to the sale; to deliver the railroad to the purchasers unencumbered of claims of any nature; that if there were any outstanding indebtedness at the maturity of the last payment, such was to be deducted from the purchase-price; that the right of way was to be from 50 to 100 feet wide and free from encumbrance; and the vendors were to execute to the purchasers warranty titles upon their compliance with the terms of the contract. The notes for the deferred payments were payable to one of the vendors, and contained the stipulation that it was subject to the terms of the contract of sale. In a suit on the note evidencing the last payment: *Held,* that the performance of the vendors' covenants was not a condition precedent to the bringing of the suit.

2. By the terms of the sale contract any outstanding indebtedness may be pleaded in reduction of the last payment.

3. The vendees, in the absence of any charge of the vendors' insolvency, non-residence, or other equitable reason, are remitted to their remedy in an action on the contract, for any breach of covenant to become responsible for and settle any claim for unliquidated damages.

4. As a general rule, in the absence of any stipulation in a contract of sale relating to the payment of the current taxes, where the sale occurs and the property is delivered subsequently to the assessment of the taxes, the payment of the current taxes devolves upon the vendor.

5. It is in the discretion of the court to allow a plea in bar, filed at the appearance term, to be verified at the trial term, where an oral motion is made at the trial term to dismiss it for lack of verification.

6. The grant of a nonsuit in this case was erroneous.

FEBRUARY 14, 1911.

Complaint. Before Judge Mitchell. Colquitt superior court. October 7, 1909.

Thomas N. Baker and the Thomas N. Baker Lumber Company, on April 10, 1906, entered into a written agreement to sell to G. E. Smith and his associates a certain line of railroad and accessories. On May 11, 1906, the parties consummated this agreement by entering into a written contract for the sale of the capital stock of the Flint River and Northeastern Railroad Company, together with the physical properties described in the contract, for the sum of $100,-000, one fourth of which was payable in cash and the remainder in five installments. The terms of sale embodied in the final contract were substantially the same as those in the preliminary agreement. The deferred installments were apportioned between the several purchasers, who gave their notes according to the apportionment specified in the contract. In the contract the vendors covenanted as follows: "The right of way along entire line to be from fifty to one hundred feet wide, all rights of way to be free from encumbrance; . . that the parties of the first part [vendors] are to pay all bills outstanding or made against the Flint River and Northeastern Railroad Company up to May 1st, 1906, and the parties of the first part are to receive all amounts due the Flint River and Northeastern Railroad Company up to the first of May, 1906; . . the vendors further agree to be responsible for and to settle any and all claims for damages of any nature that may have occurred and alleged to have occurred against the Flint River and Northeastern Railroad Company up to May 1st, 1906; in other words, parties of the first part agree to deliver to the parties of the second part the Flint River and Northeastern Railroad Company unencumbered of any claims of any nature. . . It is further understood and agreed that the parties of the second part may pay off to the parties of the first part all of the purchase-price hereinabove mentioned, at any time they may see fit, with accrued interest up to the time of said payment; and if there is any outstanding indebtedness at that time against the Flint River and Northeastern Railroad that was made prior to May 1st, 1906, or when the last payment herein provided for becomes due, it shall be deducted from the purchase-price herein contracted for; . . that the parties of the second part [vendees] are to have immediate possession of the Flint River and Northeastern Railroad, its franchises, and all

of the property herein mentioned, to operate, control, and manage the same as it sees fit, subject only to the payment of the money herein described." The vendors further covenanted "to make and execute to the parties of the second part, their successors and assigns, good and warranty titles in fee simple to all the property hereinabove mentioned, whenever the said parties of the second part have fully complied with all terms of this contract upon their part." It was agreed that the contract of sale was to be supplementary and explanatory to the written agreement to sell. The preliminary agreement contained a recital that "Dr. Baker agrees that a certain amount of the purchase-price agreed on is to be held in escrow until all such claims are settled," and a covenant that when the cash payment was made "T. N. Baker and the T. N. Baker Lumber Company shall execute such a covenant and agreement as shall give the purchasers of said railroad complete and immediate control of all the outstanding stock of the F. R. & N. E. R. R." One of the notes given in pursuance of the contract was by G. E. Smith to Thomas N. Baker for $783.75, due October 7, 1908, which contained this stipulation: "This note is subject to the terms of a contract with T. N. Baker et al., of same date herewith, recorded in office of clerk superior court Mitchell County, Georgia." Baker brought suit against Smith upon this note, and attached to his petition copies of the contract of sale and of the agreement to sell, alleging that the note was given for the purchase-money of the capital stock of the Flint River and Northeastern Railroad Company, and all of the physical property described in the writings, which property had been by the plaintiff delivered into the possession of the defendant and his associates pursuant to the terms of the sale contract. The defendant filed his plea, averring that the note sued on was one of a series of notes signed by defendant and his associates, given for the purchase of the capital stock and physical properties of the Flint River and Northeastern Railroad Company, and that all of the purchase-money had been paid except the series of notes due October 7, 1908, for $15,000, one of which is the note sued on. It was averred that the plaintiff had failed to perform the above-stated covenants in the sale contract; and that he had failed and refused to turn over the railroad unencumbered of claims, in that he had failed and refused to pay the State and county taxes for the year 1906, in that he had failed and refused to

discharge the claim of one Hinson against the Flint River and Northeastern Railroad Company, who claimed damages against said railroad company in the sum of $5,000, suit for which is now pending in the superior court of Mitchell county, Georgia, said claim having originated against the railroad company prior to May 1, 1906, and is now an unsettled claim against the railroad company; and in that the plaintiff had failed and refused to convey to defendant and his associates a right of way from fifty to one hundred feet wide as stipulated; and that according to the contract "a certain amount of the purchase-price agreed on was to be held in escrow until all such claims are settled, and in said contract it was also expressed that the road (meaning the F. R. & N. E. R. R.) is to be turned over to the new purchasers unencumbered of any claim of any nature.". The defendant pleaded that the performance of these covenants was a condition precedent to the payment of the note, and that the defendants were not liable until such covenants had been performed, averring his willingness to pay the amount of the note upon the plaintiff's discharging the various claims referred to in the plea, and making a deed to the defendant and his associates of the right of way pursuant to the terms of the contract. At the return term the plaintiff filed demurrers, general and special, to the plea, which were overruled, with the exception of the special demurrer to the plea as to the recovery by the defendant of attorney's fees against the plaintiff, which the court sustained. The plaintiff also moved to strike the plea, because it was not verified. The court allowed, over objection of the plaintiff, the defendant to verify the plea. The case then proceeded to trial before a jury, and at the conclusion of the plaintiff's evidence a nonsuit was granted. Exceptions are taken by the plaintiff to the judgment overruling his demurrer, to the failure of the court to strike the plea on motion, and to the judgment of nonsuit.

*Davis & Merry,* and *Hardeman, Jones, Callaway & Johnston,* for plaintiff.

*Jesse W. Walters* and *Shipp & Kline,* for defendant.

EVANS, P. J. (After stating the foregoing facts.)

The plea was constructed as a plea in abatement. It averred that the contract of sale made the final payment of the purchase-money dependent upon the plaintiff's performance of certain cove-

nants, which had not been performed, and therefore the action was prematurely brought. If the contract is to be construed as an undertaking to pay a definite sum of money on a day named, provided that by that day these covenants had been performed, then the performance of the acts covenanted to be performed would be a condition precedent to the right of action. *Baker* v. *Tillman,* 84 *Ga.* 401 (11 S. E. 355); *Clark* v. *Croft,* 51 *Ga.* 368. On the other hand, if the contract is to be construed as an agreement on the part of the vendors to sell certain property for a stated sum, in which agreement the vendors bound themselves by personal and independent covenants to do certain acts of a collateral nature, the performance of such covenants would not be a condition precedent to a recovery of the purchase-money, where the vendees were put in possession of the property. In the interpretation of written contracts courts will diligently seek the intention of the parties as therein expressed. Was it the intention of the parties that payment of all claims accruing prior to May 1st, 1906, was to be a condition precedent to the collection of the notes? The contract does not say so, and the plain implication is to the contrary. In the first place one fourth of the money was to be paid in cash, and the purchasers were to have immediate possession of the railroad property. The covenant that the vendors were to deliver the property to the purchasers, unencumbered of any claims whatever, plainly did not contemplate satisfaction of all claims prior to the delivery, because other portions of the contract show that such were to be subsequently settled. The parties expressly provided for a deduction from the last payment of all outstanding indebtedness. The purchasers gave their notes payable at a stated time, and stipulated that the notes were subject to the terms of the sale contract. The stipulation had the effect to restrict the negotiability of the notes, but imposed no conditions or terms not contained in the sale contract. For their protection the purchasers exacted of the vendors two general classes of covenants, viz.: (1) that the vendors agreed to be responsible for and settle all claims or obligations against the railroad company, originating prior to the sale; and (2) upon the payment of the purchase-money the vendors would execute a warranty title to the physical properties of the railroad company. The covenants of the first class did not go to the entire consideration. The subject-matter of the sale contract was the stock, franchises,

and physical property of the railroad company, and the notes represented the purchase-price, and the covenants contained only the vendors' assurance that the purchasers would get what they purchased without encumbrance. While the covenants to pay the purchase-money and the covenants of assurance against debts and encumbrances are mutual, still they are not dependent, in the sense that the performance of the latter is a condition precedent to the former. "The mutual covenants must go to the whole consideration on both sides, where the one is precedent to the other; but when they go to a part only and a breach may be paid for in damages, the covenants are independent." *Water Lot Company* v. *Leonard,* 30 *Ga.* 573. Aside from the technical rules of construction, the plain meaning of the contract is that the vendors' covenant to discharge all debts and claims was an independent covenant and was not intended as a condition precedent to the payment of the purchase-money. With reference to the covenant to convey the right of way, clearly the conveyance was by the terms of the contract not to precede the payment of the purchase-money. The case is essentially different from that line of cases, like *Baker* v. *Tillman* and *Clark* v. *Croft,* supra, where the note or contract expressly stated that the removal of encumbrances was to be a condition precedent to the payment of the notes. The plea was not good as a plea in abatement.

Is the defense set up in the answer good as a plea in bar as against the general and special demurrers of the plaintiff? The contract provides that all indebtedness outstanding at the maturity of the last payment is to be deducted from the purchase-price. The indebtedness referred to in this covenant necessarily comprehends only such items as rank as debts, and does not refer to unliquidated damages claimed as a result of a tort. The latter must be either established by a judgment or by agreement of the parties before they can be liquidated. So by the terms of the contract the parties agreed that debts against the railroad company were to be deducted from the last payment of the purchase-money; and if the vendors declined to allow the deduction voluntarily, the purchaser may plead such in reduction of the recovery. An item of indebtedness is the taxes for the year 1906. The sale contract was executed in the month of May, after the assessment of the taxes for that year. It contains no stipulation about the payment of the current taxes. As a general rule, in the absence of any stipulation as to the payment of current

taxes, it is incumbent on the vendor to pay the taxes assessed at the time of his conveyance, in order to keep his covenants good. 1 Warvelle on Vendors, § 179; *Gledney* v. *Deavors*, 8 *Ga.* 479. There is nothing in the contract indicating a departure of the parties from the general rule.

There is no charge of the plaintiff's insolvency or non-residence, nor is there any other equitable reason alleged tending to show that the purchasers may possibly be hurt by the ultimate result of the damage suit pending against the railroad company, nor is it even averred that such suit is meritorious. Under such circumstances the purchasers are remitted to their remedy against the vendor on the covenant, in the event that such damage suit terminates in a judgment against the railroad company. There is an averment in the plea that the final contract of sale was to be supplementary and explanatory of the preliminary agreement, which contained a provision that "a certain amount of the purchase-price agreed on is to be held in escrow until all such claims are settled," and for that reason it is contended that the plaintiff must settle this damage suit before he should be permitted to recover the last installment of the purchase-price. The final contract of sale contained no provision of this character, but, on the contrary, recited that the notes were executed to the plaintiff for all the purchase-price remaining after deducting the cash payment. The amount of money to be placed in escrow was not stated in the preliminary agreement, nor is it contended that any money was ever put in escrow to meet such demands against the railroad company. The final contract of sale was complete in its details, and evinced no intention of the parties to place any money in escrow.

As the plea was not of a dilatory nature and was filed at the appearance term, it was within the discretion of the court to allow it to be verified at the trial term.

On the trial the plaintiff introduced the note and contracts in evidence, and testified that the taxes had been paid partly by himself and partly by the purchasers, and that the Hinson suit had been settled. It was error to grant a nonsuit.

*Judgment reversed. All the Justices concur.*