18828. COLUMBUS BAGGING AND TIE COMPANY *v.* EMPIRE MILLS COMPANY.

DECIDED NOVEMBER 17, 1928. REHEARING DENIED DECEMBER 14, 1928.

*McCutchen, Bowden & Gaggstatter,* for plaintiff in error.
*Slade & Swift,* contra.

BELL, J. To a suit by Empire Mills Company against Columbus Bagging & Tie Company the defendant demurred on general and special grounds, which the court overruled, and the defendant excepted.

The action was to recover damages for an alleged breach of contract by the defendant in refusing to accept and pay for brick. The petition alleged that the plaintiff in its trade name, Empire Brick Company, made with the defendant a contract for the sale of a quantity of brick, as evidenced by the following writing signed by the parties through their respective agents, to wit:

"The Columbus Bagging & Tie Co.,

"Columbus, Ga., June 13, 1927.

"Empire Brick Co., Columbus, Ga.

"Gentlemen: We beg to confirm the offer made your Mr. C. W. Mizell for 400,000 brick or as many needed to erect our new warehouse at $10.50 per thousand delivered our siding at our new warehouse, to be delivered as needed.

"Very truly yours,

"Columbus Bagging & Tie Co. M. Sternberg.

"Above brick to be kiln run brick.

"Above price accepted. Empire Brick Co., C. W. Mizell, Sales Manager."

The petition alleged that on July 29, 1927, the defendant "breached said contract," and refused to accept and pay for the brick, on the pretext that the defendant had decided to build the warehouse through an independent contractor, and not to construct the same directly with its own force. The above writing was attached to the petition as Exhibit A, and the petition contained, among others, the following further allegations: "The said contract between plaintiff and defendant was in the form of an offer to plaintiff by the defendant to buy, as shown by Exhibit A, and the acceptance thereof by plaintiff, which was made. The said offer by defendant was made for defendant by M. Sternberg, who is and was secretary and treasurer of defendant, and had authority and did make said offer for and on behalf of the defendant. When said offer was made by the defendant and accepted by plaintiff, the offer by defendant and its acceptance by plaintiff were executed in duplicate originals, and one original was retained by defendant, and one by plaintiff, as a memorandum of the completion of the agreement of the parties."

The suit was in two counts, in one of which the damage was laid in the sum of $895, as the difference between the contract price and the market price at the time and place of delivery, and in the other of which the damage was laid in a considerably larger sum, as the difference between the contract price and the cost of manufacture.

It is elementary that the response to an offer will not amount to an acceptance, so as to effectuate a contract, unless it be identical with the terms of the offer and unconditional (*Monk* v. *McDaniel,* 116 *Ga.* 108 (3), 42 S. E. 360; *Gray* v. *Lynn,* 139 *Ga.* 294, 77 S. E. 156); but this principle can not be applied so as to avoid

the conclusion of a proper and sufficient acceptance in this case. Although the plaintiff could have prevented any possible doubt upon the question of acceptance had it merely used the one word "accepted" (see *McGhee Cotton Co.* v. *Herrine*, 10 *Ga. App.* 700, 74 S. E. 66; *Southern Wood Preserving Co.* v. *Strain*, 27 *Ga. App.* 332, 108 S. E. 251; *Lowe* v. *Woodson*, 28 *Ga. App.* 290, 111 S. E. 582; *Terry* v. *International Cotton Co.*, 136 *Ga.* 187, 70 S. E. 1100), we should not cast aside that which the parties have drawn up and signed as expressive of apparently serious purposes, simply because they have not used apt and suitable language, such as might have been employed by a skilled attorney in drafting a contract.

The cardinal rule of construction is to ascertain the intention of the parties, and to this end all the attendant and surrounding circumstances may be looked to if necessary. While words are to be given their usual and common signification, and while the language used by the plaintiff, to wit, "Above price accepted," if given a hard or strict construction, might imply an acceptance only as to the rate or price per thousand at which the brick were to be sold, still it can not be overlooked that the defendant was in the market for brick in rather a large quantity, and took the pains to address to the plaintiff an offer embracing several conditions such as kind, quantity, price and place of delivery, all expressed in a brief communication, but evidently with some degree of care. The plaintiff could not have supposed that the defendant was merely trifling or engaged in passing away the time. If the plaintiff did not like the defendant's offer and was for any reason unwilling to sell the brick in accordance with the terms thereof, it could very easily have declined the offer in express terms. It seems only reasonable to infer that if the plaintiff did not intend to accept the offer in all of its terms, it would never have responded in such language as was used and by solemnly placing its signature upon the very paper presented by the defendant as an offer. We can not think that a layman would be unwilling to enter into contractual relations such as are asserted by the plaintiff in this case, and would yet yield his signature as the plaintiff did, without a more express guaranty against liability than was contained in the words with which its signature was here accompanied.

The plaintiff intended either to accept the offer or to make a pretense of accepting without actually doing so. If the language

which it employed would, upon a literal construction, have the effect of splitting the offer by ignoring some of its terms while accepting others, such a construction would not be in keeping with the attendant and surrounding circumstances. One can not reasonably suppose that the plaintiff did not intend to accept the proposition of the other party, without inferring a purpose on its part to restrict the apparent significance of its act in signing the paper, and to do so secretly by choosing words of a limited and narrow meaning. If the plaintiff was unwilling to enter into the proposed contract, why the gesture of signing? If it should be said that the choice of the particular language was not deliberate but was made in the natural and regular course, that in itself would amount virtually to an admission that complete acceptance was intended. Indeed, it is more likely that the choice was entirely casual, not studied. It is not improbable that in the negotiations between the parties the price was the principal thing discussed, so that when the defendant prepared and presented its offer, the price being the matter uppermost in the plaintiff's mind, it wrote the words, "above price accepted", intending to accept the offer as made. It is well known that quantity in the sale of goods may influence price, as will also the kind, quality, and place of delivery. In the instant case it is not unreasonable to assume that the word "price," as used by the plaintiff, was intended to embrace each and all of these conditions, or, in other words, that the term was used in a comprehensive sense, really taking the place of the word "offer". In this view, what the plaintiff wrote and signed would have the same meaning as "Above offer accepted," and this, in our opinion, is the proper construction.

The words here under consideration are not to be studied abstractly as words in a dictionary, but must be examined in the light of the circumstances; and, among the circumstances, we see not only that the plaintiff signed the paper along with the defendant, but that the parties acted with such seriousness as to execute the writing in duplicate, one copy being retained by the plaintiff and the other by the defendant as a memorandum of what each had undertaken. The defendant must have believed that the plaintiff intended to enter into contractual relations upon the terms expressed in its offer, and the existence of such belief must have been apparent to the plaintiff.

It is a principle, as related to a contract, that the meaning placed upon it by one party, and known to be thus understood by the other party, at the time of execution, shall be held to be the true meaning. Civil Code (1910), § 4267. This rule as it is stated in the code seems to refer only to completed contracts, but we think the reason of it is applicable in the present case.

It is our conclusion that, from the language used, considered in the light of the circumstances, the plaintiff's acceptance was intended fully and fairly to meet the proposition as presented to it, and while this view may not be in accord with technical reasoning, we think it harmonizes with what would have been the understanding of reasonably and untechnically minded men in the situation of the plaintiff and the defendant at the time of the transaction in question. *Slater* v. *Savannah Sugar Refining Corp.*, 28 *Ga. App.* 280 (110 S. E. 759).

Upon the question discussed above depended not only the general but also most of the special grounds of the demurrer. All the grounds were properly overruled.

*Judgment affirmed. Jenkins, P.J., and Stephens, J., concur.*