20162. WELLHOUSE *v.* CENTRAL LEASES INC. *et al.*

DECIDED AUGUST 29, 1930.

*Harold Hirsch, M. E. Kilpatrick,* for plaintiff.

*Jones, Evins, Powers & Jones,* for defendant.

BELL, J. Louis Wellhouse brought suit in the municipal court of Atlanta against Central Leases Inc., and Ben J. Massell, to recover the sum of $454.32 as damages for an alleged breach of a lease contract between Wellhouse, as lessor, and Central Leases Inc., as lessee, the performance of which contract was guaranteed by Massell. A general demurrer to the petition was sustained; and the plaintiff's appeal to the appellate division of the municipal court and his certiorari to the superior court having been respectively denied, he brought the case to this court.

The lease contract was executed on March 28, 1923, and provided for a term of 50 years. The property was located in the City of Atlanta; and the contention is that the defendants breached the contract by failing to pay the Atlanta city taxes for the year 1928, in accordance with a covenant by the lessee "to pay during the entire term of this lease all taxes or other charges that may be assessed against said property." The petition alleged that after the failure and refusal of the defendant lessee to pay the taxes, and the issuance of a fi. fa. therefor, the plaintiff, on March 9, 1929, paid the sum of $454.32, "representing 1928 City of Atlanta taxes on said property." It appeared from the petition that Central

Leases Inc. assigned the lease to Phenix Investment Company, on July 1, 1924, as security for a note for $12,500. Phenix Investment Company, the holder, sold this note and transferred the lease to Emory University, on September 18, 1925. Thus the matter stood until May 28, 1928, with the exception of an additional line of transfers, as follows: On October 13, 1924, Central Leases Inc. assigned the lease to Lee Hagan, subject to the prior transfer to Phenix Investment Company, Hagan assuming payment of the note to that company. On October 5, 1927, Hagan transferred the lease to Commercial Lease Corporation, subject to the same condition and liability; and on April 7, 1928, Commercial Lease Corporation transferred the lease to Louis Wellhouse, the original lessor, who assumed the payment of the note referred to. Wellhouse paid the note on May 28 thereafter, and obtained a transfer of the lease from Emory University.

The transfer to Wellhouse from Commercial Lease Corporation recited that it was made "for value received," including as a part of the consideration the transferee's assumption and agreement to pay the note originally due to Phenix Investment Company, then held by Emory University, and containing an additional clause, as follows: "It is the intention and purpose of the transfer and surrender of this lease contract that Central Leases Inc., the original lessee, and its assigns, shall be released from all further obligations imposed upon lessee in said lease contract, and the leasehold estate for years in said property shall revert to Louis Wellhouse, the lessor, and owner of the fee." The lease contract as originally entered into contained, besides the lessee's covenant to pay the taxes, certain other provisions which would appear to be material in construing the instrument and in determining the rights and liabilities of the parties. For instance, the lessee was permitted to sublet the premises, in whole or in part, upon certain conditions, but no transfer or assignment or subletting was in any wise to affect the obligation of the lessee to the lessor. All provisions of the lease contract were to extend to or "bind or inure to the benefit not only of the lessor and of the lessee, but also of their respective successors and/or assigns;" and it was "distinctly understood and agreed that this instrument is and shall be construed only as a lease, creating in lessee no interest in said premises other than it has therein as a tenant, and lessee shall do no act or make any contract which shall in any

way create any lien or affect title to said premises or the building to be erected thereon, or that would affect in any way the fee-simple title to said land as now held by lessor."

We agree with the view taken by the other courts, that the petition failed to set forth a cause of action. The charter of the City of Atlanta contains the following provisions on the subject of taxation: "The mayor and general council shall have full power and authority, and they shall provide by ordinance for the assessment, levy, and collection of an ad valorem tax on all real and personal property within the corporate limits of said city, . . same to be done as of the first day of January of each year, which date is hereby fixed as the taxing date of said city. . . The taxes due the City of Atlanta on real estate and personal property of all kinds, taxable under the laws of Georgia and the charter of said city, shall be due and payable in three installments of equal amounts of one third each, the first installment falling due on April 15, the second on July 15, and the third on October 15, of each year, and on these dates one third of the taxes assessed under the existing provisions of said charter shall be due and payable; and on failure to pay said several installments when due, same shall bear interest at the rate of seven per cent, per annum; and if same are not paid on or before the 15th of October of each year, execution shall issue therefor and shall be collected by the marshal. A discount of one and one half per cent. will be allowed upon total of annual taxes if paid on the date when the first installment is due, as herein provided. . . In all cases of failure to return property, real, personal, and otherwise, for taxation, by the 15th of March of each year, a penalty of ten per cent. shall be added to the value of the property of such defaulting owner, for taxation." Ga. L. 1913, p. 507, §§ 37, 49, 55.

The parties took special pains to stipulate in the lease contract that the lessee should have no interest in the property except as a tenant, and that as between the parties the fee-simple title should remain "as now held by the lessor." Whether in these circumstances there was a leasehold interest subject to taxation as the property of the lessee, separate and distinct from the freehold (*Wright* v. *Central of Georgia Ry. Co.*, 146 *Ga.* 406, 91 S. E. 471), we are here concerned only with a tax against the freehold. The plaintiff is complaining because the defendants did not pay a tax

*for which he was responsible* as owner of the fee, and for which *the defendants became liable only by the terms of the contract* and thus only as between the parties to that instrument. Compare Civil Code (1910), §§ 1018, 3333. Under the city charter it appears that the lien for taxes attached to the property as of January 1, 1928; and we may assume for the purposes of this case that the taxes were "assessed against said property" as of that date, within the meaning of the lease contract. But, in any event, the taxes were not due until April 15 thereafter. Prior to this date, to wit, on April 7, the lease was assigned to the lessor, with a stipulation that the original "lessee, and its assigns, shall be released from all further obligations imposed upon lessee in said lease contract." Thus the lessor reacquired the premises after the assessment but before the taxes were due. On a sale of property under the same circumstances, without stipulation to the contrary, the seller as between the parties, would have been liable for the taxes. *Baker* v. *Smith,* 135 *Ga.* 628 (4) (70 S. E. 239). Here, however, the lessee was not responsible for the taxes as owner or taxpayer, but assumed the payment thereof merely as an addition to the rent, and his obligation arose in no other way. Although the taxes had been assessed prior to the transfer of April 7, 1928, the contract did not require payment of the same before the city's due date of April 15; so that at the date of the transfer the obligation as to taxes was one to be performed in the future.

Counsel for the plaintiff in error say that the phrase, "further obligations," in the stipulation releasing the lessee and its assigns from "all further obligations imposed upon lessee in said lease contract," has the meaning of future obligation, and in support of their general position cite the case of O'Fallon *v.* Nicholson, 56 Mo. 238 in which the court held: "A release by a lessor of his lessee from 'further' liability under his lease is not a release from liability for taxes already accrued, and which by the terms of the lease the lessee had assumed to pay. The word 'further' as there used means 'future'." In that case, however, the lessee had failed to pay the taxes at the time they were due, and thus his covenant with the lessor had already been broken. For the purpose of this case, we may agree with counsel as to the meaning of the phrase referred to. Since under the city charter the taxes were not payable until April 15, it follows that on April 7 the covenant to pay the

same fell within the definition of "future obligations." We conclude, therefore, that the transfer in this language was intended to relieve the lessee and its assigns from the promise to pay such taxes.

There is another possible solution of the case that will lead to the same result. When the lease was transferred back to the lessor, there was a merger of the interests which had previously existed therein. Civil Code (1910), § 3682; *Pitts Banking Co.* v. *Fenn,* 160 *Ga.* 854 (129 S. E. 105); 35 C. J. 1058. There was a surrender of the premises, which, in the absence of agreement to the contrary, discharged the lessee and its assigns from liability for rents due in the future. *Rucker* v. *Tabor,* 127 *Ga.* 101 (56 S. E. 124); *Gay* v. *Peak,* 5 *Ga. App.* 583 (3) (63 S. E. 650); *Johnson* v. *Watkins,* 26 *Ga. App.* 759 (107 S. E. 341); American Bonding Co. *v.* Pueblo Investment Co., 80 C. C. A., 97 (8) (150 Fed. 17, 9 L. R. A. (N. S.) 557); Morris *v.* Suerken, 88 Misc. 262 (151 N. Y. Supp. 817); Richmond *v.* Savill [1926], 2 K. B. 530 (51 A. L. R. 1053); 36 C. J. 120, 337, 339. In the instant case the taxes were not to be paid until a date subsequent to the transfer or surrender; and thus it would seem that the lessee and its assigns would have been relieved from liability therefor by operation of law, even without the stipulation as to the release from further obligations, as contained in the transfer to the lessor. If this is true, the stipulation was unnecessary; and while parties will ordinarily be presumed to have intended something by every provision contained in a contract, still the clause under consideration certainly can not be construed as adding or reserving a liability where none would otherwise have existed. If the parties choose to do so, they may expressly provide in their contract for the same rights or liabilities as would have been implied by law in the absence of agreement upon the subject. Construing the language of the last transfer in the light of the circumstances, including the various other transfers and the provisions of the lease, and giving to it a free, everyday translation, as should be done (Civil Code of 1910, § 4268 (2); *Columbus Bagging & Tie Co.* v. *Empire Mills Co.,* 38 *Ga. App.* 793 (145 S. E. 886); *Pilgrim Health & Life Ins. Co.* v. *Gomley,* 40 *Ga. App.* 30 (3) (148 S. E. 666), we think the clear intent of the parties was at least to relieve the lessee from the payment of rent, or of anything in the way of rent, to become

due at some date in the future. In this conclusion we have found it necessary to differ with counsel for the plaintiff in error only in regard to the time when the obligation to pay the taxes became mature under the terms of the lease; but this is the controlling matter, and in our view the case was properly decided by the courts below.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*