14400

WHETSTONE v. NEW YORK LIFE INSURANCE CO.

(188 S. E., 793)

*Messrs. Williams & Busbee,* for appellant-respondent,

*Messrs. Gyles & Garvin* and *Thomas, Lumpkin & Cain,* for respondent-appellant,

December 16, 1936.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

On May 8, 1924, the defendant, in consideration of the payment of the first annual premium of $104.01, issued to Noah Whetstone its policy, insuring his life in the sum of $3,000.00. The policy, in addition to the usual provisions, contained what is commonly known as a total and permanent disability clause, carrying income payments and waiver of premiums, in this language:

"3. Benefits.—Upon receipt at the Company's Home Office, before default in the payment of premium, of due proof that the insured is totally and presumably permanently disabled and that such disability occurred after the insurance under this policy took effect and before its anniversary the insured's age at nearest birthday is sixty years, the following benefits will be granted:

"(a) Income Payments.—The Company will pay to the insured a monthly income of $10.00 per $1,000.00 of the face of the policy during his lifetime and continued disability, beginning immediately on receipt of said proof. Any income payment due before the Company approves the proof of

disability shall be payable upon such approval. If disability results from insanity, income payments under this section shall be paid to the beneficiary in lieu of the insured.

"(b) Waiver of Premiums.—The Company will waive payment of any premium falling due after approval of said proof and during such disability. Any premium due prior to such approval is payable in accordance with the terms of the policy, but if due after receipt of proof will, if paid, be refunded upon approval of proof."

The policy as originally issued was payable, in the event of death, to the estate of the insured; but in 1930, the insured having in the meantime married, the plaintiff, his wife, was substituted as beneficiary, by proper indorsement on the policy.

The complaint alleged that the insured, Noah Whetstone, had been since the 1st day of January, 1932, totally and presumably permanently disabled, by reason of insanity. The action was brought to recover income payments under the terms of the policy, aggregating $1,050.00, covering the period of disability from January 1, 1932, up to and including December 1, 1934. It is also alleged that all premiums falling due subsequent to the 1st day of January, 1932, were waived under its terms and provisions by reason of the total and permanent disability of the insured.

The plaintiff brings this action under that provision of the policy, already quoted, which provides that income payments will be paid to the beneficiary in lieu of the insured where disability results from insanity. The gist of the action, pertinent to the appeal here, is contained in this paragraph of the complaint:

"That owing to the nature of insured's disability namely, insanity, it was impossible for him to give the notice thereof required of him under the terms of the policy, and he was and is excused from failure so to do; that, upon information and belief, the defendant did have notice of the insured's disability about the month of December, 1932; that it was

impossible for plaintiff, as beneficiary under said policy to give notice of insured's disability, and she is excused from failure so to do until about the month of October, 1933, when insured was confined to the South Carolina State Hospital for the insane, whereupon she immediately offered the proof of insured's disability, dating from January 1, 1932 and requested defendant to provide her with its forms for submitting such proofs; that defendant refused to furnish its said forms and to permit plaintiff to furnish proof of insured's disability, at the same time denying liability under said policy, and claiming that said policy had lapsed and was no longer of any force and effect; that prior to October, 1933, aforesaid, it was impossible for plaintiff to give proof of said disability of the insured to defendant due to the fact that plaintiff was wholly ignorant of said policy, provisions and terms relating to furnishing of proof of disability, by reason of the insured's keeping said policy locked up in a trunk all the while until he was committed to said State institution for the insane."

It is further alleged that the insured fully complied with all of the terms and conditions of the policy of insurance except such as he was excused from performing by reason of his insanity, and that the plaintiff, as beneficiary, has fully complied on her part with all of its terms and conditions except such as she was excused from performing by reason of the facts and circumstances heretofore mentioned and alleged in the complaint.

The defendant, by way of defense, denied that the insured was totally and permanently disabled while the policy was in full force and effect; and further set up that the policy lapsed for nonpayment of the premium due May 8, 1932, and, further, that no receipt of due proof of such alleged total and permanent disability was received at the home office of the company before default in the payment of premium, nor was such proof received within six months after the default in the payment of the premium, and per-

mitted by the policy, and that in any event, "Mrs. Ruby Whetstone, wife of the insured and beneficiary, and as the real party in interest under the terms of the policy is not excused from filing proofs in accordance with the terms and conditions of the policy, and therefore cannot recover."

The case was tried at the March, 1935, term of the Court of Common Pleas for Aiken County, and a verdict was rendered in favor of the plaintiff for $1,050.00, with interest.

Upon the conclusion of the testimony, the defendant moved the Court for a directed verdict in its favor upon several grounds, which will be hereafter discussed. The motion was refused, and the case now comes before this Court upon exceptions assigning error because of the refusal to grant the directed verdict.

The contentions of the defendant are that the policy of insurance lapsed for the nonpayment of the premium maturing on May 8, 1932; that Noah Whetstone, the insured, was not mentally incapacitated before default in the payment of this premium; that no proof of disability or notice of disability was filed with the company as required by the policy as a condition precedent to recovery of benefits before "default in the payment of the premiums" on the policy, or within six months after the default had occurred; and, further, that the plaintiff, Mrs. Ruby Whetstone, as wife of the insured and beneficiary named in the policy, is the true claimant under its terms, and was not excused from filing claim in accordance with the strict requirement of the policy.

The premium falling due on May 8, 1932, was not paid. Its nonpayment is sought to be excused by proof of the insured's insanity prior to that date, which rendered him totally and permanently disabled, and which also rendered him incapable of filing proof of such disability as a basis for income payments, and as a basis for a waiver of the pre-

miums by the company, including the premium falling due May 8, 1932. It is also contended on behalf of the plaintiff that no proof was filed with the defendant of the total disability of the insured by her, as beneficiary, prior to May 8, 1932, for the reason that she was not in possession of the insurance policy, did not know the name of the insurance company which issued it, and did not know that she was the beneficiary until some time in October, 1933, when the policy was discovered following the commitment of her husband, the insured, to the State Hospital for the insane; but that immediately thereafter she gave notice and offered proof.

A careful review of the record convinces us that the Circuit Judge was correct in submitting all questions to the jury.

The testimony shows that the insured and the plaintiff were married April 28, 1929, at which time the insured was a young man twenty-six years of age. He had been a successful farmer on a small scale, and prior to that time had been honorably discharged from the United States Army. According to the medical testimony offered at the trial and the testimony of relatives and near neighbors, he began to show symptoms of insanity early in the year 1930. He became restless, shiftless, and irresponsible, whereas prior to that time he had been an industrious tenant farmer, attentive to his duties on his farm. He became subject to periods of depression, when he imagined that every man's hand was against him, which would be succeeded by periods of elation, when he would become talkative and excitable.

At times he would imagine himself to be a cowboy. He would go around the countryside in the fall of the year buying old, dry, seedy cows on credit, with the expressed intention of placing them in a pasture, and later selling them at a profit, when he not only had no money with which to pay for the cows, but he had no land nor winter pasture,

nor anything with which to feed them. At other times he suffered from what might be described as delusions of grandeur. The testimony shows that he frequently and irrationally indulged in "big conversation," would rate himself an important man in large affairs, and would liken himself to "a wolf on Wall Street." He would plant a crop on his rented land and then abandon it, leaving his wife and two infant children there, to be aided by relatives in its cultivation and harvest. As his mental derangement developed, he conceived the notion that the country was on the verge of revolution; and he went about armed with a knife, a pistol, and a shotgun, and talked vaguely, but threateningly about "getting even" with somebody.

It would not be worthwhile to make further reference to the testimony on this phase of the case. It is apparent that there was ample evidence to be submitted to the jury on the question as to whether the insured was mentally incapacitated on January 1, 1932, which was five months prior to May 8, 1932, when the premium on this policy fell due. He became violently insane in October, 1933, at which time he was committed to the State Hospital for the Insane in Columbia. His family physician, who had him under observation during all of this period, said that he was afraid of him, and that he should have been incarcerated in the State Hospital much earlier than he was.

The defendant seeks to refute mental incapacity of the insured prior to May 8, 1932, by calling attention to a letter of date June 7, 1932, written one day before the grace period expired, and purportedly signed by the insured. This letter was typewritten on the office stationery of a firm of fire insurance agents doing business at Wagener in Aiken County. It was addressed to the defendant, inclosed a dividend voucher purportedly signed by the insured, and made inquiry with reference to applying the dividend voucher on the premium due. There was testimony on behalf of the plaintiff which tended to show that this letter

was not written or signed by the insured, who knew nothing about the operation of a typewriter, but that the name of the insured was written thereon by his sister, Miss Gertrude Whetstone. But even if it be conceded (and it is not) that the insured wrote the letter, the question of his insanity, and its bearing upon the filing of proof of his disability, was properly for the jury's determination.

The next question to be considered is: Was the plaintiff as the beneficiary named in the policy excused from giving notice and filing proof of the insured's disability, prior to the maturing of the premium of May 8, 1932? This, we take it, is the real issue in the case.

It is unquestionably the rule in this State that the giving of notice and the filing of due proof of disability, as required by the terms of the policy, is a condition precedent to recovery. This principle has been uniformly held in many cases. *Craig v. U. S. Health & Accident Ins. Co.,* 80 S. C., 151, 61 S. E., 423, 18 L. R. A. (N. S.), 106, 128 Am. St. Rep., 877, 15 Ann. Cas., 216; *Parker v. Jefferson Standard Life Ins. Co.,* 158 S. C., 394, 155 S. E., 617; *Black v. Jefferson Standard Life Ins. Co.,* 171 S. C., 123, 171 S. E., 617; *Corley v. Atlantic Life Ins. Co.,* 179 S. C., 95, 183 S. E., 596; *Lee v. Metropolitan Life Ins. Co.,* 180 S. C., 475, 186 S. E., 376. However, there is an exception to this general rule, which is equally well recognized, and that is, that where the facts show that it was rendered impossible for the insured to give the notice and furnish the proof required under the policy by reason of the very disability insured against, noncompliance with the policy provisions as to giving notice and furnishing proof is excused where the beneficiary gave notice and offered to furnish proof of disability with reasonable promptness under all of the circumstances. *Levan v. Metropolitan Life Ins. Co.,* 138 S. C., 253, 136 S. E., 304; *Caldwell v. Volunteer State Life Ins. Co.,* 170 S. C., 294, 170 S. E., 349; *Garner v. Volunteer State Life Ins. Co.,* 171 S. C., 1, 171 S. E., 370.

The facts in this case tend to show that the insured kept the policy in question locked up in his trunk and concealed from his wife, the beneficiary. The plaintiff testified, as already stated, that she knew that her husband had a policy of insurance on his life, but her knowledge went no further than that. She did not know the name of the insurance company which issued the policy, nor did she know that she was the beneficiary named therein, nor that the policy carried a total and permanent disability clause, nor did she know any of its terms and provisions. The insured kept the key, she had no access to the trunk, and she never saw the policy until after the insured was committed to the insane asylum, in October, 1933. Then the trunk was opened, the policy found, and immediate notice given to the defendant company of the claim of the plaintiff for total and permanent disability benefits under its terms.

The defendant argues that another letter appearing in the record dated January 5, 1933, addressed to the defendant and purportedly signed by Mrs. Whetstone, the plaintiff, refutes any conclusion that she did not know of the existence of the policy and its provisions. This letter recited the serial number of the insurance policy, advised the defendant that the insured had for the six months previous to the date of the letter been under the care of a physician, was incapable of doing any work, and requested necessary blanks upon which to make claim for disability benefits. The sister of the insured, Miss Gertrude Whetstone, testified positively that the entire letter was in her handwriting; that the name of the plaintiff was signed at the bottom of it by her, but that she did not recall where she obtained the serial number of the insured's policy, or who, if anybody, requested her to write the letter.

The plaintiff testified that she knew nothing whatever concerning this letter and its contents; that she made no request that it be written, and did not know of its existence until it made its appearance at the trial. Miss Gertrude

Whetstone was a school teacher and did not reside with the plaintiff. This letter, and that of June 7th, were in evidence, and doubtless were carefully examined and compared by the jury. It was a question for the jury to determine whether or not the plaintiff wrote the letter or signed it, and the inferences flowing therefrom, if any.

The facts in the case of *Levan v. Metropolitan Life Insurance Company, supra,* are very apposite. Levan was mentally deranged when his June, 1933, insurance premium fell due, and he was committed to the State Hospital for the Insane late in that year. He died there in 1924. The premium was not paid, nor was it thereafter paid. No notice or proof of disability as required under the terms of his policy was ever given to the company until after his death. Levan's wife, who was the beneficiary, knew that the policy was in existence, but did not know its terms, and could not get possession of it for the reason that her insane husband had it locked up in a box. Some time before his death she managed to get possession of it, and then called it to the attention of the company's agent, but no proof of disability was filed prior to his death. The policy contained a total disability clause substantially like the clause we have in this case, except that it provided only for waiver of the payment of the premiums becoming due during such disability. It did not also provide, as in the case at bar, for the payment of income benefits.

We think it clear that it logically follows from the doctrine laid down in the *Levan case* that income payments may be claimed from the inception of the disability of the insured in the case at bar, in addition to claiming waiver of the premiums.

The insurance contract issued to the insured provides for the doing of two things, namely, paying monthly income benefits, and waiving premiums. The same conditions which excuse nonperformance in giving the notice and proof required so as to bring about the waiver of premiums, as in

the *Levan case*, will apply with equal force and efficacy with reference to excusing nonperformance in giving notice and proof of disability as a basis for the payment of income benefits under the provisions in the policy in this case. It would be illogical to hold otherwise. These two provisions are inseparable. That which saves one will save the other.

Within due time, after the verdict was announced, the defendant moved for a new trial upon substantially the same grounds as those dated in its motion for a directed verdict, and upon the additional ground that disability benefits could be claimed by the plaintiff only from January 5, 1933, which was the date of the letter purportedly signed by Mrs. Whetstone, the plaintiff, and which it is contended gave the defendant its first notice of the disability of the insured. The trial Judge reached the conclusion that there was merit in this contention and filed an order which directed that a new trial be granted *nisi*, unless the plaintiff remit upon the record all payments included in the verdict of the jury except those payments to be made from and after the 5th day of January, 1933, to the date of the verdict. In other words, he eliminated from the verdict twelve monthly payments amounting in the aggregate to $360.00, accruing from January 1, 1932, to January 5, 1933.

We think the trial Judge fell into error in so doing. It was for the jury to say, under the evidence, whether or not the insured was totally and permanently disabled as defined in the policy, on January 1, 1932, and whether the beneficiary gave notice of the disability with reasonable promptness in October, 1933. If she did, then the status of disability, and all rights under the policy, would be fixed as of January 1, 1932. These, and all other questions in the case were solved by the jury in favor of the plaintiff, and we see no reason to disturb the verdict, under the law herein declared.

The exceptions of the plaintiff to the granting of the new trial *nisi* are sustained. The exceptions of the defendant-appellant are overruled. Judgment should be entered up in

favor of the plaintiff against the defendant in accordance with the verdict of the jury rendered upon the trial of the case.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and BAKER concur.