SCHLINTZ, Guardian, Respondent, vs. EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Appellant.

*November 9—December 7, 1937.*

For the appellant there was a brief by *Fawsett, Shea & Hoyt,* attorneys, and *C. F. Mikkelson* of counsel, all of Milwaukee, and oral argument by *Mr. Mikkelson.*

For the respondent there was a brief by *Benton, Bosser, Becker & Parnell,* attorneys, and *David L. Fulton* of counsel, all of Appleton, and oral argument by *Homer H. Benton.*

FRITZ, J. The life and disability insurance policy on which this action is based was issued by the defendant to Charles R. Crowell in June, 1920, and he paid all premiums thereon until the semiannual premium payable on December 9, 1934. On February 28, 1935, Crowell was adjudged an incompetent by the county court of Outagamie county, and on May 28, 1935, the plaintiff, Harvey A. Schlintz, was appointed and qualified as his guardian. Thereupon this action was commenced to recover the annual income provided in the policy to be paid in monthly instalments in the event that Crowell should, before attaining the age of sixty years, become physically or mentally incapacitated to such an extent that he would be wholly and presumably permanently unable to engage in any occupation or perform any work ·for compensation of financial value. The plaintiff alleged in his complaint that about February 1, 1934, Crowell, then fifty-four

years of age, became mentally incapacitated to such an extent that he was unable to engage in any occupation or perform any work for compensation of financial value; that his total disability has continued to exist and is permanent; that all agreements and conditions of said policy to be fulfilled and performed on his part have been duly fulfilled and performed; that the defendant waived the proof of disability required under the terms of the policy; and that none of the annual income for permanent and total disability has been paid.

So far as its defenses are involved on this appeal, the defendant denied in its answer that Crowell became mentally incapacitated about February 1, 1934, so that he was unable to engage in any occupation or perform any work for compensation of financial value, or that he was suffering from a mental disability, or that it was of a permanent character; and that it waived proof of disability required under the terms of said insurance policy. Further answering, the defendant alleged that the policy lapsed on or about December 9, 1934, by reason of the nonpayment of the insurance premium which became due on that date; that in accordance with the options available under the policy Crowell elected to and did surrender the policy about January 7, 1935, for its cash surrender value after deducting therefrom the loans theretofore made thereon; that its check to Crowell for that balance was accepted and cashed by Crowell, who thereby terminated all of his rights under said policy, which was then canceled and ceased to exist as a contract of insurance; that under the policy total and permanent disability benefits are payable only if such disability occurred while it was in full force and effect and all premiums thereon were fully paid, and if due proof of such disability and that it had existed for sixty days previous was furnished while the policy was in full force and effect and all premiums thereon were fully paid; and that although the policy further provides that the premiums payable would be waived after receipt of such

proof and the disability benefits would become payable six months after the receipt thereof, no proof of alleged disability was furnished before or after the surrender and termination of the insurance, and there was a total failure to perform any of the conditions required to entitle the assured to any of the disability benefits provided for in the policy.

On the trial it appeared without dispute that premiums were paid up to December 9, 1934, when another semi-annual premium became payable with thirty days of grace. Then Crowell wrote a letter to the defendant in which he expressed doubt as to his ability to carry the policy, and requested information as to the cash surrender value of the policy if he found it necessary to drop it at the expiration of the period of grace, and also similar information if he kept the policy in force until the next premium became due on June 9, 1935. Defendant promptly replied that loans on the policy aggregated $2,380, which left a balance of $133.40 as its cash surrender value. On January 8, 1935, Crowell wrote to the defendant that he would be unable to carry the policy after January 9, 1935, and requested that the cash surrender value be remitted to him. Under date of January 16, 1935, Crowell wrote and inquired whether his previous letter had been received, and stated that if it had not, the defendant should accept this letter as a notification to cancel the policy. On January 21, 1935, the defendant replied that Crowell should send the original policy, or, if it was lost, should submit proof of such loss verified by him and the beneficiary on an inclosed form. Crowell and his wife signed that form on January 30, 1935, at the office of defendant's agent at Appleton, and Crowell forwarded it to defendant's Chicago office with a letter explaining his inability to locate the policy. On February 12, 1935, Crowell received the defendant's check at Appleton for the balance of the surrender value, and cashed it at a hotel in Oshkosh where he stayed for five days, during which time he became

intoxicated and spent all of the proceeds. There was proof that on December 10, 1934, Crowell had told a friend, John Schlintz, that the premiums on the policy were paid, and attached considerable importance to the fact that it would take care of his wife after his death; that in December, 1934, or January, 1935, Crowell had told his wife that he had negotiated another loan on the policy to take care of the premium; and also that his brother had sent him a check for $338 on December 21, 1934, to pay the premiums on the policy in question and on another policy, but that Crowell had indorsed that check to his wife to deposit it in the bank without telling her what it was for. On February 25, 1935, two examining physicians, appointed by the county court of Outagamie county, reported that Crowell's mental condition was impaired, and in immediate need of proper treatment; and he became a voluntary patient at the Northern State Hospital for the Insane, where the medical staff's diagnosis was "Manic Depressive Psychosis—Depressed Type (mild)."

On the trial herein the court found that about May 1, 1934, Crowell because of his very poor physical and mental condition became unable to work and was forced to leave his employment; that on October 1, 1934, and at all times thereafter, he was wholly and presumably permanently incapacitated to engage in his customary occupation, or to perform or engage in any work or labor, and by reason of that disability he was on October 1, 1934, and at all times thereafter, wholly and presumably permanently disabled and unable to engage in any occupation or perform any work for compensation of financial value; that for more than sixty days prior to December 9, 1934, and continuously thereafter, he was of weak, unsound, and diseased mind to such an extent that he was incapable of understanding or comprehending the nature and consequences of his acts, or of an ordinary business transaction, and that because of his mental condition he was wholly incompetent and unable to comprehend the nature and

extent of his own disability or to give notice and proof thereof to the defendant, or of comprehending or understanding the nature and effect of the letters written by him to the defendant in 1934 and January, 1935, or of the acceptance by him of the defendant's check for $133.40 on February 12, 1935. Upon those findings the court concluded that the alleged surrender and cancellation of the policy as claimed by the defendant was and is void and of no legal effect; that it was never legally canceled, rescinded, or surrendered; and that it at no time lapsed because of nonpayment of any premiums or assessment, but was still in full force and effect.

Appellant's first contention is that the trial court's finding as to Crowell's mental incompetency is not sustained by the evidence. In support of that contention the appellant claims that Crowell's letters clearly establish that he fully comprehended his act of surrendering the policy and the effect of it; that that act of surrendering is not evidence of incompetency; that the plaintiff's witnesses by their acts and conduct during the period in question believed Crowell to be competent; and that his failure to make claim under the policy was not due to incompetency. A review of the record discloses that although there is considerable conflict in the evidence and the inferences which can reasonably be drawn therefrom, in respect to the facts found by the court, as stated above, there is sufficient credible evidence in support of the findings because of which they cannot be held to be contrary to the clear preponderance of the evidence. In view of that conclusion on our part, no useful purpose will be served by an extended discussion of the evidence. It is true that in the absence of other evidence to the contrary, the literary style and apparently businesslike character of Crowell's letters in relation to surrendering the policy would warrant finding that he comprehended the nature and effect of his acts in that respect. But those letters are not necessarily conclusive on that subject, and the other evidence bearing thereon fully warranted the testimony of Dr. Gilbert

Seaman, superintendent of the Northern State Hospital for the Insane, that he "would not care to pass an opinion merely upon the reading of those letters." In them there was nothing to indicate that Crowell understood that if he became totally disabled he was entitled under the policy to be relieved from the payment of further premiums, and to be paid an income of $100 monthly while so disabled, or that he realized or suspected that his mental condition was such that he was, or was apt to be, so disabled. On the contrary, he wrote that he was only recently able to get back to do any work, when in fact he was unable to accomplish anything in his attempts to work. It is obvious that if he had been sufficiently competent mentally to comprehend his actual condition and his rights and obligations under the policy, he would have known that there was no reason for him to write that "there is grave doubt if I can continue to carry this policy," or to inquire "if there is anything you could suggest as to what might be done with this policy in the way of carrying it for a lesser amount." On the other hand, the testimony by Crowell's wife, his brother, four of his friends or associates, including Dr. L. A. Schoen, who had also advised him as a physician, as to Crowell's emotional, unsettled, flighty, and erratic acts and conduct in 1934 and 1935, including his unsuccessful efforts to continue, with even the gratuitous co-operation and assistance of his friends, in the line of business which he had conducted successfully for many years, fully warranted the testimony of those witnesses that they considered him mentally incapable of exercising such normal, reasoned judgment as was essential to the conduct of business transactions, and that he was therefore mentally incompetent to engage in such transactions or affairs.

The defendant further contends that the court erred in finding that the defendant had notice on or before Decem-

ber 10, 1934, that Crowell was totally and permanently disabled. The only possible basis for any inference to that effect is the statement, "I have not been well for a considerable period of time and only recently have been able to get back to do any work," in Crowell's letter of December 10, 1934, to the defendant. However, the plaintiff does not claim that there is sufficient evidence to sustain that finding. Instead the plaintiff contends that no such notice to defendant was necessary in view of Crowell's mental incompetency. That issue is raised by the defendant's next contention that insanity does not render inoperative provisions in the policy, which on their face purport to require proof of total and permanent disability to be furnished to the insurer before premium payments under the policy are to be deemed waived, and liability accrues thereunder for disability benefits. In that connection the defendant claims that even if the alleged surrender or cancellation of the policy is set aside on the theory that Crowell was mentally incompetent at the time, then according to its provisions the policy lapsed because of the nonpayment of the premium which became due December 9, 1934, and that the policy automatically became converted into paid-up extended term insurance with no right to disability benefits. The provision of the policy which is material in passing upon those matters reads as follows:

"*If* the insured before attaining age sixty, provided all premiums have been duly paid and this policy is then in full force and effect, *becomes physically or mentally incapacitated* to such an extent that he is and will be wholly and presumably permanently unable to engage in any occupation or perform any work for compensation of financial value, *and furnishes due proof thereof,* and that such disability has then existed for sixty days the *society,* during the continuance of such disability, *will waive payment* of any premium *payable* upon this policy *after receipt* of such proof. . . ."

It is true that on the face of that provision the apparent intention is that the waiver by the insurer is to be only as to premiums payable "after receipt" of the required proof of disability. There is no occasion to question the effect and applicability of that provision when the disability is not accompanied by such mental incapacity as renders it impossible for the insured or some one on his behalf to furnish that proof. When there is no such impossibility, there is applicable the conclusion stated in such cases as *Bergholm v. Peoria Life Ins. Co.* 284 U. S. 489, 52 Sup. Ct. 230, 76 L. Ed. 416, that,—

". . . The obligation of the company does not rest upon the existence of the disability; but it is the receipt by the company of proof of the disability which is definitely made a condition precedent to an assumption by it of payment of the premiums becoming due after the receipt of such proof."

But in that case there was no evidence of mental incapacity that rendered it impossible for the insured to furnish the required proof, and because of the absence of such evidence there was, as the court pointed out in *Mutual Life Ins. Co. v. Johnson,* 293 U. S. 335, 55 Sup. Ct. 154, a fundamental distinction between that case and cases in which such incapacity was proven. But there are cases in which that distinction was not considered controlling, and it is held that no waiver was in effect until after proof of disability was furnished, even though it was impossible for the insured to furnish such proof because of his mental incompetency. However, in a majority of the cases on that subject, including *Comstock v. Fraternal Accident Asso.* 116 Wis. 382, 383, 385, 389, 93 N. W. 22, 23, the decisions sustain the plaintiff's contention that under the policy in suit the furnishing of proof of disability was excused because Crowell's insanity, prior to default in payment of the premium due December 9, 1934, rendered it impossible for him to furnish such proof; and that therefore he is entitled to the premium-

waiver benefit and the disability payments under the policy as though such proof had been furnished.

In *Comstock v. Fraternal Accident Asso., supra,* the provision in an accident insurance policy read:

"Written notice shall be given . . . within ten days of the date of the accident . . . and unless such notice and statement is received as aforesaid, all claim to indemnity or benefit under this certificate shall be forfeited to the association."

The plaintiff sustained an injury covered by the policy but failed to give the required notice and statement within ten days of the accident because he was thereby so incapacitated that he was unable to do so. He contended that therefore his failure to give such notice and statement was excused. In sustaining that contention this court said:

"It may safely be admitted that there is some conflict of authority as to whether, under any circumstances, in a case like this, liability can survive failure to comply with the requirement as to notice. The overwhelming weight of authority, we may safely say, however, is in favor of plaintiff's position. The reasoning of courts supporting conclusions in that regard are far from being harmonious or satisfactory. However, when the contract in question was made, the law was deemed so well settled that, notwithstanding the mandatory language of a policy requiring some act to be done as a condition precedent to the right to recover for a loss, it should be read with an exception saving the rights of the assured from forfeiture for a failure to comply therewith where he is totally incapacitated from acting in the matter, that we hold the parties here entered into the contract in contemplation thereof, and that language to that effect became a part of the instrument the same as if it were plainly embodied therein, though it violates the literal sense of the words used, and regardless of whether it can be, by general rules for judicial construction, found within the reasonable scope of such words. . . .

"But without further discussion of the matter, and without adopting in many respects the reasoning found in some of the cases, it is considered that a requirement in a contract

of insurance that the insured shall, after suffering loss, perform some act as a condition precedent to the right to recover therefor, does not include cases where performance is prevented without fault of the assured, because of his being incapacitated to act in the matter. . . ."

However, the defendant claims that decision is not in point because the provision in the accident policy, which was then under consideration, provided for the forfeiture of the insured's claims unless the required notice was given within the specified time, while under the policy in suit, there is no provision or issue as to a forfeiture, but rather a question as to the accrual of an obligation to waive, which does not arise until receipt of proof of disability, and then the premiums waived are only such as become due after receipt of that proof. Those technical distinctions are not sufficient to render inapplicable to the policy provision now under consideration the rule adopted by this court in the *Comstock Case,* and which was considered also applicable, in the following cases, to similar provisions in policies for life insurance and disability benefits: *John Hancock Mut. L. Ins. Co. v. De Costa* (C. C. A.), 88 Fed. (2d) 479; *Berry v. Acacia Mut. Life Asso.* (Ariz.) 67 Pac. (2d) 478; *McCoy v. New York Life Ins. Co.* 219 Iowa, 514, 258 N. W. 320; *Swann v. Atlantic Life Ins. Co.* 156 Va. 852, 159 S. E. 192; *Rhyne v. Jefferson Standard Life Ins. Co.* 196 N. C. 717, 147 S. E. 6; 199 N. C. 419, 154 S. E. 749; *Levan v. Metropolitan Life Ins. Co.* 138 S. C. 253, 136 S. E. 304; *Baylor v. State Mut. Life Assur. Co.* 113 N. J. Law, 389, 174 Atl. 526; *Missouri State Life Ins. Co. v. Case,* 189 Ark. 223, 71 S. W. (2d) 199; *Hickman v. Pan-American Life Ins. Co.* 186 La. 997, 173 So. 742; *Whetstone v. New York Life Ins. Co.* 182 S. C. 150, 188 S. E. 793; *Marti v. Midwest Life Ins. Co.* 108 Neb. 845, 189 N. W. 388, 29 A. L. R. 1507; *Metropolitan Life Ins. Co. v. Carroll,* 209 Ky. 522, 273 S. W. 54; *Bank of Comm. & Tr. Co. v. Northwestern*

*Nat. Life Ins. Co.* 160 Tenn. 551, 26 S. W. (2d) 135, 68 A. L. R. 1380; *Mid-Continent Life Ins. Co. v. Hubbard* (Tex. Civ. App.), 32 S. W. (2d) 701; *Johnson v. Mut. Life Ins. Co.* (C. C. A.) 70 Fed. (2d) 41, 44.

In its decision in the case last cited, *i. e., Johnson v. Mutual Life Ins. Co., supra,* which was affirmed by the federal supreme court in *Mut. Life Ins. Co. v. Johnson, supra,* the circuit court of appeals said:

"An overwhelming majority of the state courts that have passed upon the matter have, however, laid down the rule that a condition precedent requiring notice or proof of disability is excused where its performance is impossible by reason of the physical or mental incapacity of the insured, as where the insured is insane or unconscious during the period when proof should have been furnished, and that the condition may be performed within a reasonable time after the incapacity is removed. . . .

"We think the rule announced by the majority of the state courts is the sound rule to apply. The situation is one where the parties may fairly be said to have contemplated a capacity to make the proof when disability should arise, for otherwise such a contract may prove a trap for the unwary by imposing conditions which incapacity may render it impossible to perform. There is, it is true, no language in the condition which qualifies it in the event that its performance should become impossible; but it is a general rule in the law of contracts, that impossibility may excuse a condition, though a condition precedent, if the existence or occurrence of the condition is no material part of the exchange for the promisor's performance, and the discharge of the promisor will operate as a forfeiture. Restatement of Contracts, § 301; and see Illustrative Case (4). See, also, Williston on Contracts, vol. 2, § 806."

The facts in the case at bar clearly bring it within the rule as stated in the last sentence of that quotation, and the authorities cited in support thereof. The only duty which Crowell was to perform to put the waiver of the premuim payment in operation in the event of his total disability

while the policy was fully in force and effect, was to comply with the condition that he furnish the required proof of his disability to the insurer. But as the discharge of that duty was rendered impossible by his mental incompetence, and his furnishing thereof in compliance with that condition was no material part of the consideration to be paid or the things of value to be performed by him in exchange for the insurer's promised performance, and the discharge of the latter would operate, in effect, as a forfeiture, the impossibility of compliance by Crowell with that condition excused his compliance therewith. Under those circumstances, all the insurer could require was that it be given notice of Crowell's disability by him within a reasonable time after his recovery of sanity, or by his guardian within a reasonable time after the latter's appointment and knowledge of the policy.

There was no undue delay in that respect. On December 10, 1934, and throughout the period of grace, Crowell's wife did not know of the disability provisions in the policy, and believed his statements that he had paid the premium out of the proceeds of a loan which he had made thereon. On March 6, 1935, John Schlintz, as attorney for Crowell, upon discovering the disability provisions of the policy, immediately notified the defendant of Crowell's disability and offered to file proof thereof, and demanded the reinstatement of the policy and payment thereunder for that disability. But the defendant in its correspondence during the month following, and particularly on April 3, 1935, insisted that the policy had been surrendered and that therefore, and because no proof of disability had been submitted, the policy was forfeited and there appeared to be no necessity for such proof. Under the circumstances further compliance with the requirements as to notice or proof of disability was not necessary. *Lingelbach v. Theresa Village Mut. F. Ins. Co.* 154 Wis. 595, 143 N. W. 688; *Kutschenreuter v. Providence Washington Ins. Co.* 164 Wis. 63, 159 N. W. 552.

The defendant also contends that the court erred in holding that disability benefits were payable from October 1, 1934, which the court found, as stated above, to be the date on which Crowell became permanently and totally disabled. Appellant claims that monthly benefits were not to start under the terms of the policy until six months after proof of disability was filed, or the filing thereof was waived by the defendant. In relation to the payment of benefits in the event of total disability, the policy provided that "the society, during the continuance of such disability . . . will pay to the insured an income of twelve hundred dollars a year payable in monthly instalments." Under that provision the insured, if otherwise entitled to disability income, was clearly entitled, in so far as the period for which such income was to be paid is concerned, to the monthly instalments of $100 for each month "during the continuance of such disability." There is nothing in that provision that excludes any portion of that period from the period for which disability income was to be paid, or that can be deemed to defer the commencement of that period to the time when the proof of disability is filed. However, on the other hand, under the provisions in the policy that the disability income shall be "payable in monthly instalments," and that it "shall be payable six months after receipt of proof of disability and monthly thereafter during the continuance of such total and permanent disability," the payment of the instalments to which Crowell was entitled for the first six months "during the continuance of such disability" were not to become due until six months after the receipt of proof of disability; and the instalments for the subsequent months were to become due monthly thereafter. Inasmuch as the necessity for the insured's complying with the requirement to furnish proof of disability ceased by reason of the defendant's letter of April 3, 1935, as stated above, payment of the income for the first six months of Crowell's disability must be deemed to have become due six

months after April 3, 1935, which would be on October 3, 1935; and on the amount which was then due on that last date, at the rate of $100 per month for each month during the entire continuance of his disability, he was entitled to interest from that date to the entry of the judgment herein. And on the subsequently accruing monthly instalments he was entitled to interest from the date on which each of those instalments became due. In the court's conclusion of law the amount stated to be due Crowell under the policy up to December 9, 1936, is $2,466.60, after deducting therefrom the $133.40 paid to the insured on February 12, 1935, as the balance of the cash surrender value of the policy. Thus, the court rightly allowed $2,600 as disability income, at $100 per month, for the twenty-six months from October 9, 1934, the date of Crowell's total incapacity, to December 9, 1936. The only amount allowed for interest appears to be $29.05. As that is less than the amount to which the plaintiff was entitled as interest on the instalments that became due on October 3, 1935, and thereafter, that allowance was not prejudicial to defendant.

*By the Court.*—Judgment affirmed.