Meyer S. Levitt, Guardian, Appellant, v. New York Life Insurance Company, Appellee.

No. 45509.

MAY 13, 1941.

Lester C. Davidson and Robert J. O'Connor, for appellant.

Shull & Marshall, for appellee.

GARFIELD, J.—Since the case comes to us following a ruling on demurrer, it will be necessary to summarize the pleadings. The petition of plaintiff-appellant as guardian of Bernard Kline, a minor and incompetent, alleges that on February 6, 1931, defendant-appellee issued to said Kline, then aged 15, its policy, copy of which was made a part of the petition; that annual premiums were paid in advance down to and including February 6, 1934; that on or about June 1, 1934, the insured became insane and therefore totally disabled and utterly incapable of transacting business, making contracts, and appreciating the nature or effect of his acts, and that said insanity continued to the present time; that insured was judicially adjudged insane on March 9, 1936, and committed to the state hospital for the insane; that said insanity commenced prior to June 1, 1934; that plaintiff first knew of the insanity on the 18th of February, 1936, the day he was appointed guardian; that as soon thereafter as was reasonably possible written notice of claim was sent by plaintiff and received by defendant on the 13th of March, 1936; that said written notice of claim contained a demand for the sums then due under the policy and an offer to furnish proper proof of all facts stated in the notice; that the insanity of insured was such as to make it impossible for him to give written notice of claim at any time after June 1, 1934; that at all times material hereto insured resided with his father, a physician, who knew of the existence of the policy, but did not know the contents thereof, and particularly did not know the requirements relating to the necessity of giving written notice of claim. Plaintiff sought to recover disability benefits of $25 for each month commencing June 1, 1934.

The policy attached to the petition is a $10,000 life policy

in which insured's father is the beneficiary of the death benefits. An additional contract is included under which, for an added premium, the company agrees to pay the insured $25 per month for permanent disability and to waive all premiums during such disability upon receipt of due proof that the insured is so disabled. It is this part of the policy upon which plaintiff seeks to recover. The policy provisions with regard to the time of giving notice of disability are substantially as follows:

"* * * no premium shall be waived which shall have fallen due more than one year prior to the date. of receipt of written. notice of claim, as hereinafter provided.

" * * * no such monthly (disability) payment shall be made * * * for any period more than one year prior to the date of receipt of written notice of claim.

"Written notice of claim hereunder must be received by the Company during the lifetime and during the continuance of total disability of the Insured. Failure to give such notice within such times shall not invalidate any such claim if it shall be shown not to have been reasonably possible to give such notice within such times and that notice was given as soon as was reasonably possible.

"Due proof of claim must be received before the expiration of one year after default in payment of premium under said Policy, and in any event, whether or not there be a default, not later than one year from the anniversary of said Policy on which Insured's· age at nearest birthday is 60 * * * otherwise the claim shall be invalid."

Division V of the answer to the petition reads substantially as follows:

"That as shown by plaintiff's petition, no premium was paid after February 6, 1934, and no notice of disability was given by any person as provided by the terms of said policy, until the written notice which was received by defendant on March 13, 1936. That more than one year had elapsed, as shown by plaintiff's petition, between the date when the premium became delinquent and the date when the first notice of disability and claim was received by defendant, and therefore said peti-

tion shows upon its face that said policy of insurance had lapsed and ceased to exist as a contract.''

To the foregoing division of the answer plaintiff demurred on the grounds that it does not state a defense because it affirmatively appears on the face of the pleadings that (1) it was impossible to give written notice of claim at any time after June 1, 1934, (2) there was a good, legal and sufficient excuse for the delay in giving the written notice of claim, and (3) plaintiff, as soon after his appointment as guardian as was reasonably possible, gave written notice of claim. The trial court overruled the demurrer. Plaintiff elected to stand on his demurrer and suffered judgment against him dismissing his petition, from which this appeal was taken.

■ It will be noticed that the division of the answer assailed by demurrer is a separate and distinct division. It must be complete in itself. Section 11117, Code, 1939; Redfield v. Boston P. & M. Co., 178 Iowa 1275, 1277, 160 N. W. 934. Division V of the answer contains no denial of any material allegation of the petition. Therefore, these allegations stand admitted by this division of the answer. Code section 11201; 21 R. C. L. 561, sec. 120. Furthermore, the answer in three different places refers to what is shown by the petition and by these references, in effect, aside from the absence of a denial, admits plaintiff's allegations. The substance of the answer is that *the petition shows* the policy had lapsed because more than one year intervened between the date when the premium became delinquent and the date when notice and claim was received by the company. If, therefore, the petition shows that notice and claim of disability was given in proper time, Division V of the answer stated no defense and appellant's demurrer should have been sustained.

■ The policy provision upon which appellee relies is the paragraph last above quoted from the policy requiring proof of claim ''before the expiration of one year after default in payment of premium.'' The petition alleges payment of an annual premium in advance on February 6, 1934. This, including the grace period of 31 days, paid the premium to March 9, 1935. Notice and claim of disability was received by the

company on March 13, 1936, four days more than "one year after default in payment of premium." There can be no question but what the disability of insanity occurring on or before June 1, 1934, commenced while the policy was in good standing.

In connection with the provision on which appellee relies there must be read the policy provision that "Failure to give such notice within such times shall not invalidate any such claim if it shall be shown not to have been reasonably possible to give such notice within such times and that notice was given as soon as was reasonably possible." This provision would be of no benefit whatever to the insured unless it operated to excuse both the giving of notice and the making of due proof, where not reasonably possible. An extension of time to give notice of claim preceding the making of due proof surely must fairly be construed as an extension of time to furnish such proof of that claim. Appellee does not contend otherwise.

Notice and claim of disability was received by the company, according to the admitted allegations of the petition, just 23 days after appellant's appointment as guardian and knowledge of the insanity of insured. Appellee does not seriously contend that it was reasonably possible for the insane insured to have given notice nor that the guardian did not act promptly after his appointment. But appellee argues that the petition must allege facts showing it was not reasonably possible for the father of insured, to whom counsel refer as the beneficiary, to give notice of claim.

We hold that the admitted allegations of the petition sufficiently show that it was not reasonably possible to have given earlier notice of disability, that Division V of the answer stated no defense and that appellant's demurrer thereto should have been sustained. Whether upon the trial appellant will be able to prove these allegations is a question with which we are not now concerned.

It is important to keep in mind the essential difference between life insurance and disability insurance. This distinction was considered in a case involving a life policy with an added disability contract, similar to the one now before us, in Kantor v. N. Y. Life, 219 Iowa 1005, 1007, 258 N. W. 759, 760, wherein we said:

"The essential difference between life insurance and disability insurance is obvious. The object of life insurance is to provide a fund for the benefit of the estate or the heirs or beneficiaries of the insured after the insured's death. The purpose of disability insurance, on the other hand, is to protect against, not a loss of life, but a loss of earning capacity. Disability insurance protects the insured himself; life insurance is primarily for the protection of others. Disability payments are, therefore, payable to the insured; life insurance benefits go to others."

Bernard Kline (who became 21 not later than February 6, 1937) is the insured and he, not his father, is the beneficiary of the disability payments which his guardian seeks to recover. He and the company are the two parties to the contract. Neither the father nor any other person had any legal right to proceed against appellee to recover the payments now claimed under the policy. Had the father brought this suit he could have been met with the defense that he was not the real party in interest under Code section 10967 and therefore not entitled to maintain the action.

The party who ordinarily makes proof of claim is the one suffering the loss and who is entitled to recover under the policy. The policy before us, unlike some policies (as, for example, the policy involved in Whiteside v. North Am. Acc. Ins. Co., 200 N. Y. 320, 93 N. E. 948, 35 L. R. A., N. S., 696) does not provide that a third party may make proof of claim to the company. If the company intended to require notice or proof by a third party in the event of mental incapacity of the insured-beneficiary, the policy should have so stated.

In a leading case, Comstock v. Fraternal Acc. Assn., 116 Wis. 382, 93 N. W. 22, where it was held that failure to give notice of disability was excused by the incapacity of the assured, the court says at page 25:

"The fair interpretation of the requirement as to notice may well be said to be that the parties contemplated notice by the assured, though probably a notice by some one in his behalf, if necessary, would have been sufficient. However, as indicated, it may reasonably be assumed that personal performance was what the parties had in mind."

And in Maskas v. North Am. Acc. Ins. Co., 279 Mass. 523, 181 N. E. 750, it is said (page 752): "Proof must be made by the person entitled to the payment."

If notice or proof had been furnished by the insured's father or some other third party, what assurance is there that the company would not have contended it was insufficient because not furnished by the insured or one legally authorized to act in his behalf. In Marti v. Midwest Life Ins. Co., 108 Neb. 845, 189 N. W. 388, 29 A. L. R. 1507, the policy provided for notice of disability but did not state by whom it must be given. The insurance company contended, (quoting from page 389 of 189 N. W.) "That, even though the insured is incurably insane, proofs of such condition must be furnished by the insured himself, and not by anyone for him * * *." And in the Maskas case, above referred to, the company contended that proof of claim could not be made by one not entitled to the payment. We are not to be understood from the foregoing as holding that notice of disability by a third party in the event of insanity of insured would be insufficient but merely that it is not required by the policy before us nor by any rule of law.

■ The insurance company wrote this contract and under ·familiar doctrine it is to be liberally construed in favor of the policyholder, strictly against the company. Murphy v. N. Y. Life, 219 Iowa 609, 258 N. W. 749. What appellee is contending for would work a forfeiture of the policy. If a contract can, within the bounds of reason and fairness, be so construed as to prevent a forfeiture and preserve the rights of the parties, that construction will be accepted. 17 C. J. S. 742, sec. 320.

■ Were we to adopt the reasoning of appellee that an insured-beneficiary must show not only that it was not reasonably possible for him to give notice but that no one else could have acted for him, there would seldom be a case where the failure to give notice would be excused. An insured could probably see to the giving of notice of disability by calling a meeting of his acquaintances soon after taking out his policy and saying to them: "I have taken out a policy in the New York Life Insurance Company. If I become insane, some one of you must see that notice of such disability is furnished the company." Such conduct, however, would not be reasonable. When insanity

overtakes an insured he is then in no state of mind to procure others to furnish the company with notice. In this respect mental incapacity differs from physical inability. If an insured were to appoint an agent to act for him in matters pertaining to his insurance, or in other respects, such agency would be terminated by his insanity. 2 C. J. S. 1179, sec. 88. Upon what theory can the rights of this insured be forfeited or prejudiced by the failure to act of some third party who is under no legal or contractual right or obligation to act for him?

There is ample authority in support of our conclusion. We think, however, that our decision in McCoy v. N. Y. Life, 219 Iowa 514, 258 N. W. 320, is in itself controlling. This was an action brought by the beneficiaries claiming both disability and death benefits. This court squarely held that insanity of the insured excused the giving of proof of disability. The insanity, in the McCoy case, existed for more than four years prior to death of the insured. The plaintiffs were informed of the existence of the policy three years before insured's death. No notice or claim was given the company till after insured died. The McCoy opinion, written by Justice Mitchell, quotes from the leading case of Johnson v. Mutual Life, 70 F. 2d (4th C. C. A.) 41, as follows (commencing page 518 of 219 Iowa):

" 'It must be conceded that the position of the defendant finds support in cases from two jurisdictions. New England Mutual Life Ins. Co. v. Reynolds, 217 Ala. 307, 116 So. 151, 59 A. L. R. 1075; Whiteside v. North American Acc. Ins. Co., 200 N. Y. 320, 93 N. E. 948, 35 L. R. A. (N. S.) 696. An overwhelming majority of the state courts that have passed upon the matter have, however, laid down the rule that a condition precedent requiring notice or proof of disability is excused where its performance is impossible by reason of the physical or mental incapacity of the insured, as where the insured is insane or unconscious during the period when proof should have been furnished, and that the condition may be performed within a reasonable time after the incapacity is removed.' " (Citing numerous cases.)

Immediately following the above quotation from the Johnson case, the McCoy opinion continues (pages 520, 521):

"It seems to us that a fair rule to follow is the one announced in the above-cited case. * * * That part of the contract which required the insured to give notice of his insanity was impossible to be performed *because of the insanity of the insured,* * * * therefore he was excused from giving notice * * * it being impossible for *the insured* to give the notice, the New York Life Insurance Company is liable on the policy * * *." (Italics supplied.)

The McCoy decision is interpreted in Kantor v. N. Y. Life, 219 Iowa 1005, 1009, 1010, 258 N. W. 759, 761, in the following language:

"That case assumes * * * that the parties did not intend that such proofs must be filed where the disability was such that *the insured* could not possibly furnish them." (Italics supplied.)

Unless we are to repudiate our holding in the McCoy case we must conclude that insanity of the insured here constitutes a sufficient excuse for the failure sooner to give notice provided, of course, the notice given by the guardian was given as soon as was reasonably possible for him to act. It seems to us that the present case is more favorable to appellant than was the McCoy case for the policyholder. The McCoy policy, unlike the present policy, contained no provision excusing the giving of notice where not reasonably possible. Nevertheless, the court, in effect, read some such provision into the policy. In the instant case, it is unnecessary to do more than construe the policy according to well-settled rules.

There are numerous cases in other jurisdictions holding that insanity of the insured sufficiently excuses the giving of notice of disability. Annotations on this subject appear in 54 A. L. R. 611 and 59 A. L. R. 1080, where the rule is stated as follows:

"The overwhelming weight of authority is to the effect that the insured, in policies requiring notice of the accident or disability within a stipulated time after the occurrence thereof, is excused for his failure to give such notice within the stipulated period if he is prevented from so doing by reason of mental incapacity resulting from the accident or disability, provided such

notice is given a reasonable time after recovering his mental faculties.''

Some of the cases discuss the question of notice by a beneficiary or some other person in the event of mental incapacity of the insured. We have been cited to no case, and have been unable to find any after considerable independent search, which holds that notice must be given by some third party in order to recover disability payments of which the insured is the beneficiary.

In Guy v. U. S. Cas. Co., 151 N. C. 465, 66 S. E. 437, the court says (page 438): ''Of course, the notice to the company may not only be given by the physician, but by any relative or friend acting on behalf of the insured, *though their failure to do so when the insured is unable to request it is no bar on the insured*.'' (Italics supplied.)

In Pfeiffer v. Missouri State Life Ins. Co., 174 Ark. 783, 297 S. W. 847, 54 A. L. R. 600, it is said (page 851 of 297 S. W.):

''Hence, if the policy in such case is to receive a liberal and reasonable construction * * * insanity * * * should operate to excuse the insured from giving the required notice. The very object and purpose of the policy in a large part would be defeated where the company inserted in the policy a condition which it knew that the insured could not perform in person and would not be in a state of mind to obtain its performance at the hands of others. There is nothing in the terms of the policy from which it might be said that it was the duty of the beneficiary to give the notice.''

In Schlintz v. Equitable Life Assur. Soc. of U. S., 226 Wis. 255, 276 N. W. 336, the court says (page 342):

''The only duty which Crowell [insured] was to perform * * * was to * * * furnish the required proof of his disability to the insurer. But as the discharge of that duty was rendered impossible by his mental incompetence, * * * all the insurer could require was that it be given notice of Crowell's disability by him within a reasonable time after his recovery of sanity, or by his guardian within a reasonable time after the latter's appointment and knowledge of the policy.''

We have carefully considered the authorities cited by appellee. We are cited to Bergholm v. Peoria Life Ins. Co., 284 U. S. 489, 52 S. Ct. 230, 76 L. Ed. 416, for the proposition that the giving of notice of disability is a condition precedent to the liability of the company. This may be conceded. As pointed out, however, in Mutual Life Ins. Co. v. Johnson, 293 U. S. 335, 55 S. Ct. 154, 79 L. Ed. 398, there was "no evidence in that [Bergholm] case of incapacity, physical or mental, to give the prescribed notice." (See page 401 of 79 L. Ed.) The case, therefore, does not deal with insanity as an excuse for not giving notice.

Counsel also cite New England Mut. Life Ins. Co. v. Reynolds, 217 Ala. 307, 116 So. 151, 59 A. L. R. 1075. It is true this case adopts the narrower minority view that insanity of the insured does not excuse failure to give notice. This theory and this very case were considered by us in the McCoy opinion (see page 518 of 219 Iowa); and we there refused to follow the doctrine of that case. The annotator in 54 A. L. R. at page 615 says of another case adopting this minority view and frequently cited with the Alabama case, Whiteside v. North Am. Acc. Ins. Co., 200 N. Y. 320, 93 N. E. 948, 35 L. R. A., N. S., 696, that it "is clearly in conflict with, and against, the weight of authority".

Our attention has been called to the following observation regarding the case of Fairgrave v. Illinois Bankers Life Assn., 211 Iowa 329, 233 N. W. 714, near the end of the opinion in McCoy v. New York Life Ins. Co., (page 521 of 219 Iowa):

"In the Fairgrave case the beneficiaries had knowledge of the policy and of the disability of the insured and did not give notice within the ninety-day period provided by the policy. It was not shown to have been impossible to give the notice required by the policy."

Counsel for appellee has seized upon this statement and because of it offers the Fairgrave case as authority for the proposition that where the insured is incapacitated from giving notice of disability such notice must be given by the beneficiary. The quoted statement was in no sense necessary to the decision of the McCoy case. It is what the Fairgrave case really holds

that measures its weight as authority. It would have been more accurate to distinguish the Fairgrave case from the McCoy case on the ground that in the former the court did not have before it nor give any consideration to the question of insanity of the insured as an excuse for failure to give notice. The Fairgrave case was decided under the time-honored rule that there can be no recovery where proof of loss is not furnished within the period required by the policy in the absence of a valid excuse. Since insanity of the insured as an excuse for failure to give notice was not even considered in the Fairgrave case, it is no authority for the proposition that where the insured is mentally incapacitated from giving notice, the beneficiary or some other third person must act for the insured. There is nothing in the Fairgrave case that in any way conflicts with our conclusion here.

With instructions to reinstate the case and sustain appellant's demurrer to Division V of appellee's answer, this case is reversed and remanded.—Reversed and remanded.

CHIEF JUSTICE and all JUSTICES concur except MILLER, J., who dissents.

MILLER, J. (dissenting)—While I am disposed to the view that the majority opinion herein reaches the correct result, I cannot agree with some of the language contained therein.

I think that the case is properly reversed because the question, whether or not it was reasonably possible to give notice of disability within one year after default in payment of premiums, is a matter to be decided from the evidence rather than arbitrarily and as a matter of law from the pleadings involved herein.

For example, the majority opinion holds that the default occurred on March 9, 1935. The petition alleges that the plaintiff guardian was appointed such February 18, 1936, which was 20 days before the expiration of the year within which notice should have been given. The petition alleges that it was impossible for the guardian to give notice before March 11th. This allegation is impliedly admitted by Division V of the answer but it might be controverted by the other divisions of the answer and

by the proof. The evidence might show that it was reasonably possible for the guardian to give notice by March 9, 1936, and accordingly that the notice that was given came too late and is not to be excused.

My principal objection to the language of the opinion is that which deals with the father, Dr. Kline. Apparently the possibility of Dr. Kline giving notice is excluded from the picture because, as it is stated, "The party who ordinarily makes proof of claim is the one suffering the loss and who is entitled to recover under the policy." The opinion further states, "Neither the father nor any other person (than the guardian) had any legal right to proceed against appellee to recover the payments now claimed under the policy." As I see it, the opinion of the majority makes the question of the effect of failure to give notice depend upon the acts of those that had the right to recover disability benefits. The opinion overlooks two factors: first, that the policy must be kept in force for there to be any claim for disability benefits, and second, that plaintiff not only contends that he is entitled to disability payments but also contends that he is entitled to have the policy continued in force indefinitely without the payment of any further premiums.

Paragraph 10 of the petition states, "That under the provisions of said policy the defendant is indebted to the said Bernard Kline for disability benefits of Twenty-Five Dollars ($25) per month from and after the 1st day of June, 1934, to the date of this petition, together with interest thereon, and that under said policy the defendant is required to waive all premiums due under said policy from and after the 1st day of June, 1934, and is required to continue said policy in full force and effect because of said waiver of premium provision therein."

Insofar as the continuance of the policy is concerned, Dr. Kline, as the beneficiary, is clearly within the definition of one who would suffer a loss if the policy is permitted to lapse and one who would be entitled to recover under the policy eventually if the waiver of premiums is made operative to continue the policy in force. The fact that Dr. Kline would suffer such a loss and is the party ultimately entitled to recover on the contract is obvious. The fact that he should be considered in determining whether or not it was reasonably possible to give notice of the

disability so as to continue the policy in effect for his benefit has been recognized by our former decisions. Carpenter v. Centennial Mut. Life Assn., 68 Iowa 453, 456, 27 N. W. 456, 56 Am. Rep. 855; Whitlow v. Sovereign Camp W. O. W., 199 Iowa 579, 584, 202 N. W. 249; Fairgrave v. Illinois Bankers Life Assn., 211 Iowa 329, 334, 233 N. W. 714; McCoy v. New York Life Ins. Co., 219 Iowa 514, 521, 258 N. W. 320. The majority opinion would disregard the statements in these decisions on the theory that the father, as beneficiary, was not interested in the disability benefits. The factor that is overlooked is that the father is interested in the continuance of the policy for his benefit and his interest in the giving of notice of the disability for the purpose of securing waiver of premiums for his protection cannot be disregarded if we consider the picture as a whole instead of looking only at a part of it.

The opinion asks the question, "Upon what theory can the rights of this insured be forfeited or prejudiced by the failure to act of some third party who is under no legal or contractual right or obligation to act for him?" The expression "legal or contractual right or obligation", as applied to the record herein, might be misleading. The abstract does not set out the application for the policy. The policy, of course, is executed by the company and not by the insured. The contract between the insured and the company is determined from the application and the policy. If there is anything in the nature of a bilateral contract involved herein, it cannot be determined without the application before us. Of course, the insured, being but 15 years of age when the policy was issued, the company could not make a bilateral contract with him. It is a matter of common knowledge that, when policies are issued for an insured who is a minor, the application is signed by a parent or guardian so that there is some one executing the application who is legally bound thereby. Under the record, this minor had no guardian when the policy was issued so it must be assumed that Dr. Kline, as father as well as beneficiary, may have signed the application. When the facts are fully developed, then we can determine what contractual right or obligation Dr. Kline had in reference to the payment of the premiums. Without the

application before us, how can we say there is no such contractual right or obligation?

It seems to me that, when the evidence is fully developed, it may be such as to warrant serious consideration of the reason, if any, why Dr. Kline failed to give notice within the time stipulated in determining whether or not it was reasonably possible for notice of disability to be given by March 9, 1936.